[L. A. No. 20539.   In Bank.   Sept. 22, 1948.]

CORWIN A. TOWNSEND, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Corwin A. Townsend, in pro. per., for Petitioner.

Arthur E. Schifferman and Jerold E. Weil for Respondent.

THE COURT.—Corwin A. Townsend has brought before this court for review the proceeding in which the Board of Governors of The State Bar recommended that he be suspended from practice for a period of three years.

The order to show cause alleged that, in two particulars, Townsend violated the requirements of the Business and Professions Code relating to his oath and duties as an attorney. The first specification of misconduct was that he knowingly advised his client to make a conveyance of certain real property owned by her for the purpose of delaying and defrauding her creditors. A second charge, relating to inconsistent allegations in pleadings prepared by him in connection with the litigation which followed this conveyance, in effect, was dismissed by the Local Administrative Committee to which the matter was referred for hearing.

The evidence upon which the recommendation of suspension is based shows that a claim and delivery action was

commenced by J. Cabibbo in which he sought the recovery of personal property and damages for its detention. Townsend represented Bernice Von der Senden, also known as B. A. Chipman, who was one of the defendants. On March 2, 1942, following a trial, the case was submitted for decision.

Two weeks later Bonhomme M. Cahn, the attorney for the plaintiff, was told that the court had reached a conclusion and would render judgment for the plaintiff. Cahn testified that he then gave Townsend this information. "I stated to him over the telephone," Cahn told the committee, "that I had had a great deal of trouble in trying to get this automobile and personal effects which were subject to a chattel mortgage and that I did not want my client to bear any more expenses in this matter . . . He told me to give him about a week and I would hear from him. . . ." The judgment entered on March 23, 1942, was for possession of the property and $560 damages for its wrongful retention.

It appears that, for several years prior to 1942, Townsend had represented Mrs. Von der Senden in various transactions and, in particular, had advised and assisted in the making of a prior conveyance by her and reconveyance to her of the property here involved. He told the committee that he also advised her to make the deed which is the basis of the present proceeding. The record does not disclose with certainty the time when he gave Mrs. Von der Senden this advice nor when he prepared the deed. A certificate signed by him as a notary public recites that the grantor acknowledged her signature to it before him on February 2, 1942. When Townsend was asked if Mrs. Von der Senden executed the deed on that date he replied: "If that is the date on there, that is when she appeared."

There is no evidence that the deed was ever delivered to the grantee. Townsend testified on this point that, ". . . I think I told her to send it to her mother, that it should be delivered to the grantee; and later on when the matter came up I asked Mrs. Von der Senden if she had sent it to her mother and she said no, that she still had it, and I told her that it should be delivered to her mother right away on account of the judgment." He "presumed" that it was recorded by Mrs. Von der Senden, because "she was the person vitally interested."

In connection with the recordation, it appears that Townsend placed on the deed instructions to the recorder to send it, when recorded, to "A. Castellanos, attorney." Castellanos,

said Townsend, was "a Mexican attorney," an "associate" but not a member of the California bar. "I had mail addressed to him that I didn't care to have addressed to myself. I didn't want the recorder's record to show that it was sent back to me and I said 'We can send it to Mr. Castellanos and he can bring it over to me.' "

The deed was recorded on March 21, 1942, two days before judgment was entered in the Cabibbo case. When Castellanos received the deed from the recorder, he gave it to Townsend, who in turn delivered it to Mrs. Von der Senden. "I think she mailed it to her mother," Townsend testified.

Kate Adair is described in the record as the mother of Mrs. Von der Senden. At the time this proceeding was heard, she was said to be out of the state, and her testimony was not obtained.

Upon this evidence, the committee found that at the time of the trial of the Cabibbo action, Bernice Von der Senden was the record owner of the real estate conveyed by her. Upon learning of the decision of the court and before the judgment was entered, Townsend prepared for Mrs. Von der Senden the deed to Kate Adair, a nonresident of California, "which he caused to be dated February 4, 1942." After Mrs. Von der Senden executed these deeds, they were acknowledged by her before him as a notary public and, on March 21, 1942, placed of record. The conveyance was made for the purpose of hindering, delaying, and defrauding Cabibbo, as a creditor of Mrs. Von der Senden and preventing him from recovering upon his judgment.

From these facts, the committee decided that, as charged in the order to show cause, Townsend violated his oath and duties as an attorney at law within the meaning of section 6103 of article 6 of the Business and Professions Code of the State of California, as the same are prescribed by sections 6067 and 6068 of article 4 of that code. It also concluded that he had committed acts involving moral turpitude and dishonesty within the meaning of section 6106 of the Business and Professions Code. A comment of the committee accompanying the findings states "that the alleged inconsistent allegations were either justifiable in a technical sense or such as might have been made through negligence or oversight [but that] the acts of the respondent in procuring conveyances of the property in question were knowingly made with an intent to

defraud creditors of respondent's client.'' In reaching these conclusions, the committee added, it ''was particularly impressed with the fact that a purported defense which respondent described in his own testimony was entirely unsubstantiated in spite of [his] . . . representations that evidence to support his good faith in the matter would be forthcoming.''

The findings and conclusion of the committee were adopted by the Board of Governors with the correction of one minor typographical error. But it changed the recommendation that Townsend be suspended from the practice of law for a period of three months to a recommendation of suspension for three years because of prior suspensions for violation of the Business and Professions Code.

Townsend challenges the determination of the Board of Governors in three particulars: (1) that the order increasing the suspension was improper; (2) that under the law stated in *Davis* v. *Perry,* 120 Cal.App. 670 [8 P.2d 514], his actions were fully justified; and (3) that the Board of Governors was not warranted in correcting the findings of the committee. The State Bar answers these contentions by pointing out that: (1) the Board of Governors is not bound by the recommendations of the committee and Townsend's prior record justified the increased term of suspension; (2) that the finding of the committee and Board of Governors on the main issue is fully supported by evidence and (3) that the Board of Governors corrected the findings of the committee to make them conform to a stipulation in the record.

Although Townsend does not directly present the question as to the sufficiency of the evidence to support the finding and recommendation of the Board of Governors, that is the basic issue. The testimony as to his knowledge of the judgment which was about to be rendered stands uncontradicted. He then advised his client, the defendant in the action, that a deed to the property ''should be delivered to her mother right away on account of the judgment.'' The recordation of this deed was accomplished by a method designed to hide Townsend's participation in the transaction and, considering all of the circumstances, the committee was fully justified in its conclusion that Townsend advised a conveyance of property for the purpose of defrauding the creditor of his client.

In defense of the charge against him, Townsend argued to the committee that Mrs. Von der Senden held the bare legal title to the property which she conveyed, the beneficial

interest in it being in the grantee because of a resulting trust. He stated that he would produce evidence showing the purchase of the land with the proceeds from the sale of other property which Mrs. Adair sold through two escrows at California Trust Company. To support his assertions in this regard, he called an officer of the corporation as a witness, but excused him without questioning. Townsend then attempted to introduce into evidence the statements of this person made to the reporter for The State Bar in a telephone conversation initiated by him after having received a subpoena. The committee properly sustained objections to this evidence as being hearsay.

Townsend places much reliance upon the statement made in *Davis* v. *Perry*, 120 Cal.App. 670 [8 P.2d 514], that "the lien of a judgment does not attach to a naked title." But if he believed that this rule was applicable to the title held by Mrs. Von der Senden, there was no occasion for the conveyance which he advised her to make "on account of the judgment." And of some significance in this connection is the testimony of Attorney Cahn. He told the committee that when he discovered the record of this conveyance he called Townsend and said: "What is the idea of transfer by Von der Senden to her mother?" To this, Townsend answered, "My client [Mrs. Von der Senden] has a right to protect her property."

The defense that the deed made by Mrs. Von der Senden was executed and delivered in satisfaction of a resulting trust was also made in a prior action in which Mrs. Adair and Townsend were named as defendants. The trial court found that the conveyance was made to delay and defraud creditors, and the judgment was affirmed on appeal. (*Michal* v. *Adair*, 66 Cal.App.2d 382 [152 P.2d 490].)

The correction in findings made by the Board of Governors was, as The State Bar contends, merely to conform to stipulations. Moreover, it was a finding relevant only to the second charge of the order to show cause which was changed and this charge was determined in Townsend's favor.

In 1931, Townsend was suspended for one year for allowing his name to be used by an "ambulance chasing" adjustment agency. (*Townsend* v. *State Bar*, 210 Cal. 362 [291 P. 837].) In 1935, he was again suspended, this time for six months, for making false statements in a sworn declaration of his candidacy for the office of judge of the superior court. (*Townsend* v. *State Bar*, 4 Cal.2d 619 [51 P.2d 879].)

Every person who is a party to any conveyance made to defeat, hinder, or delay creditors or others, is guilty of a misdemeanor (Pen. Code, § 531), and in view of Townsend's prior record, suspension for a period of three years is not excessive discipline to be imposed in the present proceeding.

It is, therefore, ordered that Corwin A. Townsend be suspended from the practice of law for a period of three years commencing 30 days after the date of the filing of this opinion.