[L. A. No. 28833. In Bank. Oct. 19, 1966.]

In re VICTOR EDWARD URIAS on Suspension of License.

Harry D. Steward for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT.—Petitioner, a member of the State Bar admitted to practice in 1950, was convicted in November 1964 on four counts of grand theft. Motions for new trial and probation were denied, and he was given consecutive sentences of one year in the county jail on each count. He did not appeal.[1]

We suspended petitioner from the practice of law and referred the matter to the State Bar for hearing, report and recommendation as to the nature and extent of the discipline to be imposed. (Bus. & Prof. Code, §§ 6101, 6102.) A local administrative committee conducted hearings and recommended that petitioner be placed on probation for a period of two years on the condition that he be suspended from practice for the first six months thereof. The Board of Governors first recommended that petitioner be disbarred; at petitioner's request, however, the matter was reconsidered and the board

---

[1]After petitioner had been confined for 10 months and 24 days the trial court modified the sentences to time served, and ordered his release. The court then placed petitioner on probation until December 9, 1968.

now recommends that he be placed on probation for a period of three years on the condition that he be suspended from practice for the first two years thereof, retroactive to November 4, 1965.

 In this proceeding the record of petitioner's conviction of grand theft is "conclusive evidence of guilt" (Bus. & Prof. Code, § 6101). The transcript of that trial, however, was received in evidence by the State Bar (Bus. & Prof. Code, § 6102, subd. (d)), and we may examine it to apprise ourselves of the facts surrounding the crimes.

In summary, it appears that on several occasions in the spring and summer of 1963 petitioner collected money owed to his clients, endorsed the clients' names on the checks without their authorization, deposited them in his personal bank account, and failed either to inform the clients that the money had been collected or to remit to them their share of the proceeds after deduction of his fee. The practice came to light when one of his clients, a Mrs. Walters, insisted on payment and received a personal check from petitioner which was subsequently dishonored for insufficient funds. She complained to the local bar authorities, and thereafter signed an affidavit of forgery with respect to a check for $1,140 which had been made payable to her business by a debtor estate but had been endorsed by petitioner without her authorization.

While denying any intent to steal, petitioner admitted endorsing his clients' names on each of the checks in question and depositing them in his personal checking account. During this period he made no other deposits, and in a matter of months the account was overdrawn several times. Confronted with this evidence, petitioner conceded that he must have spent his clients' money for purposes other than reimbursement, and he assumed that some of the withdrawals were for "ordinary living expenses." He testified that he had maintained a separate clients' trust fund account until December 1962, when it was levied upon by the Internal Revenue Service without protest on his part. Thereafter he deposited his clients' funds in his personal account, even though he was aware that there was at least "a general rule of good practice" against such commingling.[2] With respect to the one

---

[2]In fact, this practice is strictly forbidden by rule 9 of the Rules of Professional Conduct of the State Bar, which declares in part that "A member of the State Bar shall not commingle the money or other property of a client with his own; and he shall promptly report to the client the receipt by him of all money and other property belonging to such client. Unless the client otherwise directs in writing, he shall promptly

collection he did report to a client, i.e., the collection of a claim against an estate on behalf of Mrs. Walters' business, he admitted that he concealed from her the fact that he no longer had her money by telling her employee that there might be "further paperwork" because the case involved a probate proceeding. When the deputy district attorney characterized this as stalling, petitioner replied: "Not exactly stalling her. I was perhaps trying to keep her from being alarmed. I didn't want to tell her just exactly what had happened."

Petitioner has attributed his financial difficulties to a combination of factors: a history of excessive use of alcohol,[3] domestic problems resulting in his being twice divorced, levies upon his bank accounts and office equipment because of federal tax delinquencies, and a decline in his practice in 1962-1963 due to a local business recession. Petitioner and other witnesses testified at the committee hearing that while incarcerated in the honor camp he went through an extensive period of self-reappraisal which resulted in a determination to curb his drinking habit through regular participation, continuing to the present time, in the Alcoholics Anonymous program.

Petitioner first complains that in its findings of fact the Board of Governors "expressly omitted" findings by the local committee reciting that petitioner "has been completely rehabilitated insofar as it is possible to determine" and "has had a good reputation as a lawyer and individual in the community." █ It is established, however, that "Findings of fact made by local administrative committees and the Board of Governors are not binding on this court, and we will weigh the evidence upon which the findings rest." (*Zitny* v. *State Bar* (1966) 64 Cal.2d 787, 789 [51 Cal.Rptr. 825, 415 P.2d 521].) In the present case the board did set forth the evidence, favorable to petitioner, upon which these rather conclusionary findings had been based, and of course the entire record of the proceedings is before us. █ To the extent that evidence of petitioner's rehabilitation and reputation may be relevant, we shall consider it as bearing on the sole question to be decided

deposit his client's funds in a bank or trust company, authorized to do business in the State of California, in a bank account separate from his own account and clearly designated as 'Clients' Funds Account' or 'Trust Funds Account,' or words of similar import." (See also Canon 11 of the Canons of Ethics of the American Bar Association.)

[3] As recited in the findings of the Board of Governors, petitioner has a record of public drunkenness convictions going back to 1950, the year of his admission to practice, together with related convictions of reckless driving, hit and run, and giving false information to a police officer.

here, i.e., the nature and extent of the discipline to be imposed.

Petitioner contends that the discipline recommended by the Board of Governors is too severe insofar as it would suspend him from the practice of law for two years as a condition of probation.[4] But ''Misappropriation of funds entrusted to an attorney at law is a gross violation of general morality as well as professional ethics and, in addition, is likely to endanger the confidence of the public in the legal profession. It deserves severe punishment.'' (*Sturr* v. *State Bar* (1959) 52 Cal.2d 125, 134 [338 P.2d 897].) Where there has been a grand theft conviction arising out of such misconduct, the crime ''is an offense which involves moral turpitude and clearly warrants disbarment in the absence of extenuating circumstances.'' (*In re Freiburghouse* (1952) 52 Cal.2d 514, 516 [342 P.2d 1].) Here the board first recommended disbarment.[5] Upon reconsideration, the board has seen fit to reduce the proposed discipline to a moderate period of suspension, apparently taking into account the financial hardship urged by petitioner as an extenuating circumstance and his continuing effort to control his drinking problem. In view of the gravity of petitioner's misconduct, any further leniency would be unwarranted.

Petitioner has failed to sustain his burden of demonstrating lack of support for or lack of justice in the recommendation of the Board of Governors, and that recommendation appears to be fair, just, and appropriate. (*In re Langford* (1966) 64 Cal.2d 489, 497 [50 Cal.Rptr. 661, 413 P.2d 437].)

It is ordered that petitioner be suspended from the practice of law for a period of three years, retroactive to November 4, 1965; execution of this order is stayed and petitioner is placed on probation for said period of three years upon the conditions prescribed in the recommendation of the Board of Governors in this matter, including actual suspension from practice for the first two years thereof.

---

[4] Petitioner does not complain of the fact that the board recommends a three-year probationary period rather than two years as proposed by the local committee.

[5] Prior to 1955 petitioner's conviction of grand theft would have resulted in automatic disbarment (Stats. 1939, ch. 34, p. 357), and the vast majority of grand theft convictions of attorneys since that date have resulted in disbarment or resignation with prejudice.