[S. F. No. 22523.   In Bank.   Oct. 10, 1967.]

In re DAVID EASON SMITH on Disbarment.

David Eason Smith, in pro. per., and William Quinlan for Petitioner.

F. LaMar Forshee and Herbert M. Rosenthal for Respondent.

THE COURT.—Petitioner, a member of the State Bar since his admission in 1955, was convicted of grand theft and forgery in 1965. Pursuant to sections 6101 and 6102 of the Business and Professions Code, we referred the matter to the State Bar for hearing, report and recommendation as to the nature and extent of the discipline to be imposed.

*Facts*: Petitioner was charged in an information with two counts of grand theft and two counts of forgery. Counts one and two involved petitioner's dealings with and on behalf of his client, Robert F. Hobbs. Counts three and four involved petitioner's dealings with and on behalf of another client, Robert L. Schaub.

At his arraignment petitioner pleaded not guilty to all counts. At the time of trial he pleaded guilty to count one (grand theft) and count two (forgery). The trial court dismissed counts three and four and suspended the imposition of sentence on counts one and two for five years and placed petitioner on probation for that period on certain conditions, including restitution, a prohibition against practicing law and against drinking alcoholic beverages or visiting any place where intoxicants are sold.

A special administrative committee of the State Bar conducted hearings and unanimously recommended petitioner's disbarment. At the time of the hearing, five other matters, in addition to the Hobbs and Schaub matters, involving petitioner's misconduct were introduced. These matters, along with the Hobbs and Schaub matters, were the basis of original State Bar disciplinary proceedings pending against petitioner at the time of his conviction and were held in abeyance pending the conclusion of the criminal prosecution and this proceeding. These other charges involved misappropriation of clients' funds, commingling of trust and personal funds, forgery, misrepresentation, and issuing checks without sufficient funds.

After a further hearing, Disciplinary Board I of the State Bar approved and adopted the findings of the special administrative committee, with minor changes, and unanimously recommended to this court that petitioner be disbarred. Petitioner does not question the findings but objects to the severity of the discipline.

Question: *Does the gravity of petitioner's crimes warrant his disbarment?*

*Yes.* In determining the appropriate degree of discipline, each case, whether a conviction, referral or original proceed-

ing, must rest on its own facts. This court has generally disbarred attorneys who have been convicted of serious crimes, engaged in patterns of serious offenses or habitually disregarded the interests of their clients, whatever the unfortunate causes for their misconduct.

■ Under Business and Professions Code sections 6101-6102, as amended in 1955, disbarments and not suspensions have been the rule rather than the exception in cases of serious crimes involving moral turpitude, the purpose of the statutes being to protect the public, as well as the courts and the legal profession.

■ Prior to 1955, petitioner's conviction of either grand theft or forgery would have resulted in his automatic disbarment. (Stats. 1939, ch. 34, p. 357.) In 1955 section 6102 was amended to do away with summary disbarment and, among other changes, to substitute the present language of the statute requiring disbarment or suspension ''according to the gravity of the crime and the circumstances of the case.'' No intent of the Legislature to lessen professional standards can be derived either from the wording or legislative history of the 1955 amendments. Sponsored by the State Bar, the amendments give greater flexibility and in substance (a) affirm this court's established policy of referring cases where the question of moral turpitude was doubtful upon the ''record of conviction'' to the State Bar for hearing, report and recommendation (see, e.g., *In re Hatch,* 10 Cal.2d 147, 150-151 [4] [73 P.2d 885]; *In re Richardson,* 15 Cal.2d 536, 540-541 [2] [102 P.2d 1076]); (b) provide a means of obtaining a better record than provided under the former law by the bare ''record of conviction'' (which consists of indictment, information or complaint, plea of guilty and other minute orders); (c) permit disciplinary investigation where the crime itself does not involve moral turpitude (see, e.g., *In re Langford,* 64 Cal.2d 489, 496 [5] [50 Cal.Rptr. 661, 413 P.2d 437]; *In re Hallinan,* 43 Cal.2d 243, 253 [272 P.2d 768]); (d) remove the legislative mandate that disbarment is mandatory upon the final conviction of any crime involving moral turpitude; and (e) permit this court to take into account unusual situations even in the case of more serious crimes.

Crimes of grand theft and forgery have been recognized to involve heinous misconduct for an attorney, and in *In re Urias,* 65 Cal.2d 258, 262, fn. 5 [53 Cal.Rptr. 881, 418 P.2d 849], we noted that ''the vast majority of grand theft convictions of attorneys since that date [1955] have resulted in

disbarment or resignation with prejudice.'' Similarly, convictions for forgery have resulted in disbarments since 1955. (*In the Matter of Morton Jennings Beattie* (1963) Bar. Misc. 2868; *In the Matter of William P. Crawford* (1959) Bar. Misc. 2429.)

Petitioner in the instant case was guilty of repeated and deliberate breaches of professional standards and general morality. These derelictions, according to the record, show a pattern of serious offenses, committed in an environment of concealment and deceit, starting more than two years before and continuing until petitioner's arrest in April 1965:

1962—Commingling; use of trust funds for personal purposes.

1963—Commingling; use of trust funds for personal purposes.

May 1963—Failure to deposit in trust account certain advances by a client (Mrs. Melton) for costs. Failure thereafter, despite his inability to perform services, to promptly return client's files or ever return her ''advances'' on costs and attorney's fees.

July 1963—Forged client's (Mrs. Gay's) signature to her tax refund check and misappropriated proceeds ($433.18).

1964—Commingling; use of trust funds for personal purposes.

January 13, 1964—Falsely represented to Mrs. Melton that ''advances'' would be returned to her immediately.

June 12 and 17, 1964—Settled without client's (Mr. Schaub's) knowledge or consent; forged client's signature to release and to request for dismissal and falsely notarized release; forged client's signature to settlement draft, cashed draft and misappropriated proceeds ($2,150).

August 7, 12 and 14, 1964—Wilfully disregarded his client's (Mr. Hobb's) instructions; settled case without client's knowledge or consent; forged client's signature to release and to request for dismissal and falsely notarized release; filed forged dismissal with court; forged client's signature to settlement draft, cashed draft and misappropriated proceeds ($2,250).

August 17, 1964—Issued NSF check on trust account in the sum of $433.18 to Mrs. Gay.

September 23, 1964—Wrote personal check on trust account for $50, which was returned NSF (Coppleman matter).

October 30, 1964—Falsely notarized a release (Waldhauser matter).

November 6, 1964—Forged client's (Mrs. Waldhauser's) signature to settlement draft and misappropriated proceeds ($3,500).

March 1, 1965—Issued worthless personal check to Mr. Hobbs for $2,250 on nonexistent account.

March 8, 1965—Issued worthless personal check to Mrs. Waldhauser for $2,189.92 on previously closed account.

March 17, 1965—Forged signatures of clients (Mr. and Mrs. Garner) to settlement draft and misappropriated the proceeds ($1,695).

Petitioner has no record of prior discipline. However, this case involves a repeated and continuous pattern of serious offenses, including habitual misuse of trust funds and failure to observe rule 9, Rules of Professional Conduct, which strictly forbids commingling of trust and personal funds and requires a prompt report to the client of any receipt of his money or property.

In *Sturr* v. *State Bar,* 52 Cal.2d 125, 134 [6] [338 P.2d 897], we ordered disbarment, saying: ''Misappropriation of funds entrusted to an attorney at law is a gross violation of general morality as well as professional ethics and, in addition, *is likely to endanger the confidence of the public in the legal profession. It deserves severe punishment.* In *Mills* v. *State Bar,* 6 Cal.2d 565 [58 P.2d 1273], a case involving the misappropriation of clients' funds, this court said at page 567 [3] : 'Whatever might be said in favor of a milder punishment for single misdemeanors not involving deliberate moral turpitude, *there is no doubt in our minds that any lawyer who is guilty of habitual misuse of the funds of his clients should be deprived of the license under which he is authorized to practice law, and by which he has been recommended to the public as a person worthy of trust.'* '' (Italics added.)

Petitioner's explanation for his misdeeds is that he was under pressure of financial obligations related to an unsuccessful restaurant business and to his excessive drinking. He urges that these circumstances should serve to mitigate the discipline. However, as we said in a recent disbarment case, ''our duty lies in the assurance that the public will be protected in the performance of the high duties of the attorney rather than in an analysis of the reasons for his delinquency. Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause. . . .'' (*Grove* v. *State Bar,* 66 Cal.2d 680, 685 [58 Cal.Rptr. 564, 427 P.2d 164].)

It is ordered that petitioner be disbarred and that his name be stricken from the roll of attorneys of this state, the order to become effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied November 8, 1967.