[S.F. No. 23283. In Bank. Sept. 30, 1975.]

In re RICHARD PATRICK LYONS on Disbarment.

**COUNSEL**

James Martin MacInnis and Conrad Donner for Petitioner.

Herbert M. Rosenthal and Judith A. Trice for Respondent.

## OPINION

**THE·COURT.**—Richard Patrick Lyons, a member of the State Bar since 1946, seeks relief from a recommendation of the Disciplinary Board of the State Bar that he be disbarred from the practice of law.

Petitioner was charged by indictment and found guilty by a jury of five felony counts of embezzling trust funds. Such funds were held by him in his capacity as attorney for fiduciaries of one conservatorship estate and four estates of decedents. (Pen. Code, § 506.)[1] On January 31, 1973, we ordered that petitioner be temporarily suspended from the practice of law as required upon our receipt of a certified copy of the record of conviction. (Bus. & Prof. Code, § 6102, subd. (a).) After the finality of the judgment of conviction we ordered petitioner to show cause why a final disciplinary order should not be made. (Rule 951(b).)[2] Petitioner responded, urging that the crimes of which he stood convicted did not involve moral turpitude and he requested a hearing on that issue. We denied the request on April 25, 1973, and referred the matter to the State Bar for hearing, report and recommendation as to the discipline to be imposed. (Rule 951(c).)[3] After considering the evidence, an administrative committee recommended that petitioner be suspended from the practice of law for five years commencing as of the date of petitioner's interim suspension. The disciplinary board, which reviewed the evidence and made findings which were in substance the same as those of the committee, by· a vote of 11 to 2 recommended that petitioner be disbarred.[4] Petitioner objects to the recommendation of the board and

---

[1]Petitioner was placed on probation for three years and as conditions thereof was incarcerated in the county jail for ten months and required to pay a fine, including penalty assessment, of $6,250.

[2]All references to specific rules herein are to the California Rules of Court.

The record of conviction constitutes "conclusive evidence of the guilt of the crime" or crimes which form the basis of disciplinary proceedings. (Bus. & Prof. Code, § 6101.)

[3]We have held that the conviction of a crime which requires a specific intent to defraud necessarily involves moral turpitude. (*In re Hallinan* (1954) 43 Cal.2d 243, 247 [272 P.2d 768]; see also *In re Plotner* (1971) 5 Cal.3d 714, 726 [97 Cal.Rptr. 193, 488 P.2d 385]; *In re Smith* (1967) 67 Cal.2d 460, 462 [62 Cal.Rptr. 615, 432 P.2d 231].) Penal Code section 506, which requires a·fraudulent intent to misappropriate funds entrusted to the wrongdoer, proscribes such a crime. Our denial of petitioner's request for a hearing on the question of moral turpitude was based on a required determination expressed in our order of temporary suspension and our order to show cause that the crimes of which petitioner stood convicted involved moral turpitude as a matter of law. That determination is now final. "[D]isbarments and not suspensions have been the rule rather than the exception in cases of serious crimes involving moral turpitude . . . ." (*In re Smith, supra*, 67 Cal.2d 460, 462.)

[4]Portions of the disciplinary board's findings, adopted unanimously by board members, are as follows:

"III. During the period January 1, 1969, to December 31, 1971, [petitioner] maintained

urges that discipline be limited to suspension from the practice of law as recommended by the committee.[5] We have concluded for the reasons which follow that disbarment is the proper discipline.

The burden is on the petitioner to demonstrate that the board's recommendation is erroneous or unlawful. (*In re Bogart* (1973) 9 Cal.3d 743, 748 [108 Cal.Rptr. 815, 511 P.2d 1167]; *In re Plotner, supra,* 5 Cal.3d 714, 716.) Petitioner seeks to satisfy this burden by urging that none of the clients who were defrauded were at any time exposed to nor did they in fact suffer any financial loss.

Two arguments are advanced relating to the claimed lack of exposure to loss: (1) petitioner's personal financial situation was such that any client who was damaged by petitioner might have recouped against him, and (2) petitioner always maintained in a locked file cabinet in his office cash in an amount more than sufficient to immediately reimburse the trust accounts from which he was convicted of embezzling. ■ We reject out of hand the contention that the discipline to be imposed because of a course of embezzlement is subject to mitigation in some way proportional to the personal wealth of the embezzler. ■ We have also examined the record in search of support for petitioner's contention that he kept funds on hand sufficient to immediately make whole the estates from which he had misappropriated funds. Without intending to imply that such a circumstance could properly be asserted in mitigation of petitioner's wrongful conduct, we conclude that the record fails to support the claim that such funds were in fact maintained and we agree with a committee finding that the claim is "incredible."

Petitioner also asserts in mitigation that he made restitution to all his clients and the administrative committee stated as part of its findings that

trust accounts at various banking institutions in the San Francisco Bay Area to which were deposited trust funds of [petitioner's] clients, including the funds of five clients which were the subject of the criminal case.

"IV. During such period of time, [petitioner] converted to his own use sums of client trust funds. The amounts converted varied from time to time, however, the maximum of such converted funds was $69,152.07 on December 16, 1970.

"V. After the District Attorney instituted an investigation of [petitioner's] criminal activities, [petitioner] made full restitution of all trust funds.

"VI. [Petitioner's] defense at the criminal trial and before the Local Administrative Committee of the State Bar of California was that his criminal activities were 'technical' in nature since he maintained a large fund of currency in his office fire-proof file cabinet sufficient to satisfy clients' claims for all trust funds."

[5] We have used the term "petitioner" in referring to the State Bar member, although he is technically an "objector" at this stage of the proceedings. (See rule 951(d).)

the fact of such restitution, "though only after steps were taken by the office of the District Attorney to investigate and prosecute the complaints of his clients, persuaded the Committee from a recommendation of disbarment." ■ We adhere to the rule that restitution when made merely as a matter of expediency and under pressure of criminal or disciplinary proceedings does not entitle an attorney to leniency. (See *Sevin* v. *State Bar* (1973) 8 Cal.3d 641, 646 [105 Cal.Rptr. 513, 504 P.2d 449]; *Black* v. *State Bar* (1972) 7 Cal.3d 676, 694 [103 Cal.Rptr. 288, 499 P.2d 968]; *Cutler* v. *State Bar* (1969) 71 Cal.2d 241, 253-254 [78 Cal.Rptr. 172, 455 P.2d 108].) There is here nothing in the record which demonstrates that petitioner made restitution except for reasons of expediency. ■ Indeed, the record discloses multiple instances of embezzlement from numerous victims and the withholding of funds over extended periods of time in circumstances which disclose no personal motivations or needs other than the opportunity for personal financial gain. There is nothing which suggests that petitioner would not have continued his course of action for so long as his misconduct went undetected. Nor has petitioner shown that he has since the commencement of criminal and disciplinary proceedings recognized the manifest impropriety of his actions which clearly demonstrated a complete indifference to his duties as an attorney. (See *Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 451 [113 Cal.Rptr. 602, 521 P.2d 858].)

■ We also reject petitioner's further contention that we must consider in mitigation of his offenses the fact that no complaints had been previously made against him. We have held in response to a similar contention: "[T]his case involves a repeated and continuous pattern of serious offenses, including habitual misuse of trust funds and failure to observe rule 9, Rules of Professional Conduct . . . . In *Sturr* v. *State Bar*, 52 Cal.2d 125, 134 . . . we ordered disbarment, saying: 'Misappropriation of funds entrusted to an attorney at law is a gross violation of general morality as well as professional ethics and, in addition, *is likely to endanger the confidence of the public in the legal profession. It deserves severe punishment. . . .*' (Italics added.)" (*In re Smith, supra,* 67 Cal.2d 460, 464; see also *Yokozeki* v. *State Bar, supra,* 11 Cal.3d 436, 450.) ■ Disbarment is the traditional and the proper discipline for those attorneys who have repeatedly misappropriated funds entrusted to them. Although each case must be judged on its own merits, no reason appears for a lesser discipline in the instant case. Petitioner may at the proper time, of course, seek reinstatement but only upon a showing of rehabilitation. (See *In re Hanley* (1975) 13 Cal.3d 448, 455-456 [119 Cal.Rptr. 5, 530 P.2d 1381].)

It is ordered that petitioner, Richard Patrick Lyons, be disbarred from the practice of law in this state, and that his name be stricken from the roll of attorneys, effective 30 days after the filing of this opinion.

Petitioner's application for a rehearing was denied October 30, 1975.