[S.F. No. 25142. Mar. 7, 1988.]

In re TERRENCE J. FORD on Disbarment.

812

**COUNSEL**

Ephraim Margolin and Bradford L. Battson for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

OPINION

THE COURT.—The Review Department of the State Bar Court has recommended, with one member dissenting, that petitioner Terrence J. Ford be disbarred due to his conviction of a criminal offense involving moral turpitude. Petitioner urges that the hearing referee's findings of fact, adopted unanimously by the review department, do not provide a basis for disbarment, arguing that insufficient weight was given to mitigating factors and that an actual suspension consisting of the time he has spent on interim suspension is the appropriate discipline. Although we are not unsympathetic to petitioner's plight, we cannot ignore the fact that he pled guilty to a charge of embezzling client trust funds or call his showing in mitigation sufficiently compelling to lessen the impact of that plea. We therefore adopt the recommendation of the review department.

FACTS

Petitioner was admitted to the bar on January 2, 1960. For over 20 years, he had an exemplary career, serving with the Judge Advocate General Corps of the United States Army and practicing as an associate and partner with two law firms in Sacramento and Stockton.[1] The record contains numerous references to petitioner's skill as a trial attorney.

On January 23, 1985, petitioner pled guilty to and was convicted of a violation of Penal Code section 506: "Every . . . attorney . . . intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, . . . is guilty of embezzlement . . . ." On February 25, 1985, imposition of sentence was suspended and petitioner was placed on probation for five years on condition that he pay a restitution fine of $1,000 and perform 1,000 hours of community service.

On August 21, 1985, after petitioner's conviction became final, we referred the matter to the State Bar for a hearing, report and recommendation as to the final discipline that should be imposed.[2] A hearing was held on July 15, 1986,[3] and the following month the referee issued his report and

---

[1] In July 1985, petitioner received a private reproval following a misdemeanor conviction based on a plea of nolo contendere to a charge of having failed to include certain items of income in his 1977 and 1979 income tax returns. The order approving amended stipulation filed in the State Bar Court on February 22, 1985, indicates that the failure was attributable to negligence and not to a wilful attempt to avoid the payment of taxes.

[2] Petitioner had previously been placed on interim suspension pending the final disposition of disciplinary proceedings.

[3] The August 1985 order of reference was not filed with the State Bar until October 18, 1985. The hearing was continued on a number of occasions, only once at petitioner's request and then for only 30 days.

recommendation that petitioner be disbarred. On February 10, 1987, the review department unanimously adopted the referee's findings of fact and, on a 12 to 1 vote, recommended that petitioner be disbarred.[4]

The charge against petitioner arose from his handling of $36,224.86 in life insurance proceeds entrusted to him by Barbara Rowley Garcia (Mrs. Rowley) on behalf of her minor daughter, Robin Rowley. Robin was the beneficiary of an insurance policy on the life of Frank Garcia, Mrs. Rowley's common law husband, who was killed in an automobile accident. The proceeds were sent to Mrs. Rowley, as guardian of Robin's estate, in three checks between April 24, 1981, and September 16, 1981. All three checks were turned over to petitioner to be held in trust. The first check, for $9,500, was apparently deposited in the personal account of petitioner and his wife. The other two checks were deposited in his client trust account.

Between April and October of 1981, a portion of the proceeds were distributed to Mrs. Rowley for family living expenses. The amount of these disbursals was the subject of some dispute at the hearing. Mrs. Rowley testified that she received approximately $7,750; petitioner testified that $14,300 was disbursed, $3,000 of which was paid him as his fee for obtaining payment of the proceeds despite possible claims by Mr. Garcia's natural children. This fee was allegedly paid out of a $13,000 check drawn on petitioner's trust account and payable to Mrs. Rowley. She denied receiving the $10,000 difference, however, and the check was also endorsed by petitioner and bore his personal account number under the endorsements.

By the fall of 1981, between $21,924.86 and $28,774.86 of the insurance proceeds remained. Petitioner, allegedly concerned that Robin and her mother would not spend the money wisely, suggested to them that the funds be invested in an annuity.[5] Mrs. Rowley agreed to this suggestion. Petitioner told Mrs. Rowley in early 1982 that he had purchased an annuity for approximately $21,800—a figure that corresponded roughly to the amount that would have remained after the disbursements to which petitioner testified. In fact, no annuity was ever purchased.

Over the next two years, Mrs. Rowley attempted to obtain documentation of the annuity investment, calling as often as two or three times a week

---

[4] The dissenting member so voted "because the Examiner's conduct was improper and prejudiced the Respondent in that in both the Examiner's Review Department brief and argument, he stated that certain matters were before the Review Department without setting out that the matters had been expressly stricken by the hearing panel below." No issue relating to this conduct was raised by petitioner.

[5] Petitioner's testimony that he became concerned on this score after Robin and her mother had made "about eleven different draws" on the funds is at odds with his testimony that he disbursed $14,300 of the insurance proceeds on only three occasions in the amounts of $500, $800, and $13,000.

in the latter part of 1982 and seeking the assistance of another attorney in early 1983. In October 1983, Mrs. Rowley warned petitioner that Robin's natural father was threatening to go to the police or to take legal action if documentation was not provided. In November 1983, Mrs. Rowley sought assistance from the local district attorney and, at his advice, again threatened petitioner that she would go to the police or the district attorney if the money was not returned.

Following this conversation, petitioner allegedly checked his client trust account for the first time in months and found that it contained insufficient funds to pay Robin, who had in the interim turned 18, the money owed her. Petitioner called a friend of his who owned an annuity company in Colorado and ascertained that an annuity purchased for $21,800 in January 1982 would then be worth $25,310.88—apparently due to accumulated interest and deduction of an early withdrawal penalty. Petitioner borrowed that sum from another friend and endorsed the check over to the Colorado annuity company, which in turn issued a check in like amount payable to Robin. Petitioner delivered that check to her on December 2, 1983. Petitioner conceded at the hearing that he structured the payment in this fashion "to create the illusion that there was an annuity, when in fact there was not."

At the hearing, petitioner stipulated to the truth of his felony conviction for embezzlement, admitted that he was solely responsible for the misappropriation of his client's funds, and agreed that discipline should be imposed. He sought to introduce mitigating evidence to show that suspension rather than disbarment was the proper sanction, contending that: (1) he made full restitution; (2) his misconduct was due in part to serious domestic difficulties; (3) he did not personally benefit from his misconduct; (4) numerous judges and lawyers were prepared to attest to his reputation; and (5) he had been punished sufficiently by the lengthy interim suspension. His objection to the review department's recommendation of disbarment rests on these same contentions.

ANALYSIS

■ Although the record of petitioner's criminal conviction is conclusive evidence of his guilt of the crime of embezzlement (Bus. & Prof. Code, § 6101, subd. (a); *In re Schwartz* (1982) 31 Cal.3d 395, 400 [182 Cal.Rptr. 640, 644 P.2d 833, 26 A.L.R.4th 1077]) and the recommendation of the State Bar is entitled to great weight (*In re Strick* (1987) 43 Cal.3d 644, 653 [238 Cal.Rptr. 397, 738 P.2d 743]), we must review the record and exercise our independent judgment in determining whether the facts and circumstances warrant the recommended discipline of disbarment. (*In re Chira*

(1986) 42 Cal.3d 904, 909 [231 Cal.Rptr. 560, 727 P.2d 753].) ■ We have long held that the misappropriation of client funds held in trust is a serious breach of professional ethics calling for disbarment in the absence of compelling mitigating circumstances (*In re Vaughn* (1985) 38 Cal.3d 614, 618-619 [213 Cal.Rptr. 583, 698 P.2d 651]; *In re Lyons* (1975) 15 Cal.3d 322, 326 [124 Cal.Rptr. 171, 540 P.2d 11]; *McKinney* v. *State Bar* (1964) 62 Cal.2d 194, 197 [41 Cal.Rptr. 665, 397 P.2d 425]), and petitioner bears the burden of showing that the review department recommendation in this case is erroneous. ■■■■ (*Vaughn, supra,* 38 Cal.3d at p. 618.)[6]

■ Petitioner objects to the referee's finding that he did not make full restitution, asserting that the referee improperly relied on the following notation from the minute order reflecting his sentence on the embezzlement conviction: "Pursuant to request by Atty. Meleyco, on behalf of the victims, restitution was *not* ordered. Atty. Meleyco informed the Crt. that the matter of restitution will proceed as a civil action." (Italics in original.) Although this notation alone may not establish that restitution was not made, petitioner has not met his burden of showing that full restitution *was* made. Mrs. Rowley denied receiving any portion of the proceeds of the $13,000 check from petitioner's trust account, and the referee specifically found not credible petitioner's testimony that he had endorsed that check only to facilitate Mrs. Rowley's collection of the funds. Even if petitioner was owed

---

[6] As we noted in *In re Wright* (1973) 10 Cal.3d 374, 376 [110 Cal.Rptr. 348, 515 P.2d 292], prior to 1955, an attorney convicted of grand theft from a client was automatically disbarred. With the 1985 amendments to the Business and Professions Code, effective January 1, 1986, those days will return. Under new subdivision (c) of Business and Professions Code section 6102, an attorney convicted of a felony will be summarily disbarred if "[a]n element of the offense is the specific intent to deceive, defraud, steal, or make or suborn a false statement" and "[t]he offense was committed in the course of the practice of law or in any manner such that a client of the attorney was a victim." Were this statute plainly applicable to petitioner's case, our task would be at an end. (See also Rules Proc. of State Bar, div. V, Standards for Atty. Sanctions for Prof. Misconduct, std. 3.3 ["Final conviction of a felony defined by (Business and Professions Code) section 6102(c) shall result in summary disbarment, irrespective of any mitigating circumstances."].) Petitioner asserts that his case must be governed by the law in effect at the time he committed his offense because nothing in the statute expressly reflects a legislative intent to apply this summary disbarment sanction retroactively. (See *Fox* v. *Alexis* (1985) 38 Cal.3d 621, 627-630 [214 Cal.Rptr. 132, 699 P.2d 309].) But "the primary purpose of [attorney] discipline is the protection of the public, the profession and the courts rather than the punishment of the attorney." (*In re Severo* (1986) 41 Cal.3d 493, 500 [224 Cal.Rptr. 106, 714 P.2d 1244].) The new standards may constitutionally be applied to assess the appropriate disciplinary sanction even for conduct predating their effective date (see *Guzzetta* v. *State Bar* (1987) 43 Cal.3d 962, 968 [239 Cal.Rptr. 675, 741 P.2d 172]; *Greenbaum* v. *State Bar* (1987) 43 Cal.3d 543, 550 [237 Cal.Rptr. 168, 736 P.2d 754]), and retroactive application of the new statutory provision on summary disbarment is not necessarily precluded by the absence of an express legislative mandate. *(Alexis, supra,* 38 Cal.3d at p. 629.) As the parties did not address this question in any detail and the State Bar did not rely on the statute or the new standards in making its recommendation, we do not decide whether the new provisions should be applied to foreclose petitioner's argument that disbarment is not warranted here; the same result obtains even if his mitigating evidence is considered.

the $3,000 fee he claimed to have collected out of that check, his restitution may have been thousands of dollars short. And restitution was made only after petitioner had been twice threatened by Mrs. Rowley that she would report him to the police. Not until then did petitioner even seek to determine his ability to make restitution. In these circumstances, the restitution is entitled to little weight in mitigation of petitioner's misconduct. (*Fitzpatrick* v. *State Bar* (1977) 20 Cal.3d 73, 88 [141 Cal.Rptr. 169, 569 P.2d 763]; *Lyons, supra,* 15 Cal.3d at p. 326.)

Petitioner next asserts that insufficient consideration was given the fact that his wrongful conduct was due in part to serious domestic difficulties that have since been resolved by his divorce. Evidence presented at the hearing suggested that petitioner's former wife was an uncommonly difficult person. She allegedly made extravagant demands for money, attacked him physically, directed her son to beat him up, threatened to prevent him from seeing his children, slept with another man in the family home during the marriage, and once broke into his office in the middle of the night, stole 50 case files and refused to return them unless petitioner paid her $5,000 and dropped a legal separation proceeding.[7] Petitioner testified that during this same period, however, he was a very active and successful litigator. He can point to none of the debilitating effects of personal stress we noted in *Smith* v. *State Bar* (1985) 38 Cal.3d 525, 540 [213 Cal.Rptr. 236, 698 P.2d 139], and even now exhibits none of the remorse and candor we found persuasive in *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747-748 [111 Cal.Rptr. 905, 518 P.2d 337].[8] Although domestic problems and financial difficulties are entitled to consideration in mitigation, little weight can be given them here.[9]

[7] Petitioner called as a witness to his marital problems his children's baby-sitter, who testified that she had known petitioner from the time she was 12, had spent a great deal of her teenage years at the couple's home, and had lived in their home from the time she was 18 until she was 28. She testified favorably to petitioner, but characterized herself as the confidante of his wife: "I think I basically became Susan's friend, confidant. That's at the end. I don't know what I'd call myself at the end." The referee found the mitigating evidence proffered by petitioner not credible.

[8] At the hearing, petitioner also offered to prove that the Rowley money was taken out of his trust account by his wife's influence over his office manager and was transferred to an account his wife controlled, not to his bank account. The referee properly refused to allow this evidence on the ground that it would impeach the judgment of petitioner's conviction. Although *valid* defenses to a criminal charge may be raised in mitigation despite the conclusive evidence of guilt that flows from a guilty plea (*In re Higbie* (1972) 6 Cal.3d 562, 568, fn. 4 [99 Cal.Rptr. 865, 493 P.2d 97]), petitioner's plea of guilty to the fraudulent misappropriation of funds held in trust belies his present attempt to characterize his conduct as no more than the "negligent and improper [acts of] a very busy, active trial lawyer who was having tremendous domestic problems."

[9] Petitioner has also offered, through counsel, to submit a declaration from his treating psychiatrist to the effect that petitioner "was victimized by an unusually trying, threatening, and disruptive marital situation" and that, in view of his divorce, the wrongful conduct is not likely to recur. This proffer, like petitioner's other mitigating evidence, is largely irrelevant.

■ Petitioner also objects to the referee's failure to consider evidence that he retained the confidence and respect of judges and other members of the bar even after his conviction. But the letters were excludable as hearsay in the absence of a stipulation to the contrary (rules 401, 556, Rules Proc. of State Bar; see Evid. Code, § 1200) and were, in any event, entitled to little weight as they did not reflect that their authors knew the full extent of petitioner's misconduct and still held to their original opinions of him. Under standard 1.2(e)(vi) of the Standards for Attorney Sanctions for Professional Misconduct, "an extraordinary demonstration of good character of the member attested to by a wide range of references in the legal and general communities . . . who are aware of the full extent of the member's misconduct" may be considered as a mitigating factor. The letters proffered by petitioner failed to meet this requirement.

Even were we now to consider the letters in view of the offer of proof tendered by petitioner's counsel that the writers either were aware of the full extent of petitioner's misconduct or have not changed their opinions after being made so aware, the letters offer little to suggest that leniency is warranted in the face of petitioner's persistent failure to accept more than technical responsibility for his wrongful conduct. Petitioner may continue to enjoy the respect and confidence of a number of his peers; it is our responsibility to determine if he is fit to remain a member of the bar. (Cf. *Wright, supra,* 10 Cal.3d at pp. 377, 382.)

■ Finally, petitioner asserts that he has already suffered greatly due to the length of time his interim suspension has lasted, and he suggests that he has suffered punishment enough. But delay in the conduct of disciplinary proceedings merits consideration as a mitigating factor only if it caused prejudice in a legal sense.[10] Petitioner can point to none here. His argument

Petitioner does not contend that he misappropriated the funds because of his emotional state; he asserts rather that he did not really do what he in his guilty plea admitted doing. This evidence would therefore be entitled to little weight in mitigation, even if we now had before us the psychiatrist's declaration rather than the assertions of counsel and were willing to consider information not presented to the State Bar. (Compare *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 980, fn. 2 [126 Cal.Rptr. 801, 544 P.2d 937] ["Although not part of the proceedings below, th[e] declaration (of a psychiatrist) is properly before the court and may be considered in determining petitioner's fitness to practice."] with *Rosenthal* v. *State Bar* (1987) 43 Cal.3d 658, 663 [238 Cal.Rptr. 394, 738 P.2d 740] ["We are particularly wary of extrinsic evidence consisting of 'opinions about petitioner's mental attitude (that are) based largely on petitioner's own out-of-court statements. Such evidence is virtually impossible to evaluate in the absence of cross-examination.' (*In re Possino* (1984) 37 Cal.3d 163, 171, fn. omitted [207 Cal.Rptr. 543, 689 P.2d 115].)"].)

[10] Under Standards for Attorney Sanctions for Professional Misconduct, standard 1.2(e)(ix), "excessive delay in conducting disciplinary proceedings, which delay is not attributable to the member and which delay prejudiced the member" may be considered as a mitigating factor.

is little more than tautological, as he asserts that the interim suspension has prejudiced him because he has been suspended from the practice of law. This is true in every instance of interim suspension; a showing of prejudice requires more.

Our handling of cases similar to petitioner's has varied over the years. At one point, we were relatively strict, and disbarment was indeed the rule for the misappropriation of funds. (See, e.g., *In re Abbott* (1977) 19 Cal.3d 249, 254 [137 Cal.Rptr. 195, 561 P.2d 285]; *Wright, supra,* 10 Cal.3d at p. 382.) In recent years, conduct little different from petitioner's—and arguably more serious—has been found on occasion to warrant only a term of actual suspension. (See, e.g., *In re Mudge* (1982) 33 Cal.3d 152, 156-157 [187 Cal.Rptr. 779, 654 P.2d 1307].) Petitioner has not demonstrated the existence of truly compelling mitigating circumstances sufficient to persuade us that the review department's recommendation of disbarment in this case is unwarranted. He pled guilty to a charge of embezzling client trust funds and cannot diminish that fact by attempting now to place the blame elsewhere. His efforts to do so negate whatever weight his showing in mitigation might otherwise command.

We conclude that no lesser sanction will adequately protect "the public, the profession and the courts . . . ." (see *Severo, supra,* 41 Cal.3d at p. 500) and that petitioner should "bear the burden of proving by a sustained course of conduct his ability to practice law without supervision before being permitted to practice again." (*Strick, supra,* 43 Cal.3d at p. 657.) We therefore adopt the review department's recommendation.

It is ordered that petitioner Terrence J. Ford be disbarred and that his name be stricken from the roll of attorneys in this state. It is further ordered that petitioner comply with the requirements of rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, of the effective date of this order. This order is effective upon the finality of this opinion.