[L.A. No. 30578. Dec. 6, 1976.]

In re BALDO M. KRISTOVICH on Suspension.

### COUNSEL

Joseph A. Ball and Laurence F. Jay for Petitioner.

F. LaMar Forshee, Herbert M. Rosenthal, Ronald W. Stovitz and Arthur L. Margolis for Respondent.

### OPINION

**THE COURT**—In this proceeding we review the recommendation of the Disciplinary Board of the State Bar that petitioner be suspended from the practice of law for three years upon conditions of probation, including actual suspension for three months, because of conduct resulting in a conviction for perjury.

Petitioner, who was admitted to the practice of law in California in 1938, has no prior record of discipline. On July 24, 1972, he was convicted of two counts each of perjury (Pen. Code, §§ 118 and 118a) and the preparation of false documentary evidence (Pen. Code, § 134). Following petitioner's diagnostic commitment to the Department of Corrections pending determination of his eligibility for probation (Pen. Code, § 1203.03), the trial court on December 15, 1972, suspended

criminal proceedings and sentenced petitioner to five years probation without formal supervision on conditions including payment of a $2,000 fine.

The record of petitioner's conviction was filed with this court, and in February 1973, on the ground that the offense of perjury involves moral turpitude, we imposed interim suspension pending resolution of petitioner's appeal of his convictions (Bus. & Prof. Code, § 6102, subd. (a)). In March 1973, we vacated the order of suspension upon petitioner's showing of good cause.

In December 1973, the Court of Appeal affirmed petitioner's convictions for perjury but remanded for the trial court's reconsideration petitioner's motion for a new trial as to charges of preparation of false evidence for a "fraudulent or deceitful purpose." The trial court granted the motion; the People eventually dismissed those charges. This court and the United States Supreme Court declined to review the Court of Appeal decision affirming the convictions for perjury. In December 1974, the criminal action having become final, we issued an order requiring petitioner to show cause why a final disciplinary order should not be rendered (Cal. Rules of Court, rule 951(b)). We denied petitioner's requests that we dismiss this action on the ground that moral turpitude was not involved, or that we grant a hearing to consider his contention (Cal. Rules of Court, rule 951(b)), and we referred the matter to the State Bar for hearing, report and recommendation as to the nature and extent of the discipline to be imposed.

In August 1975, the three-member local administrative committee unanimously recommended that petitioner be suspended from the practice of law for three years, with ninety days actual suspension. The disciplinary board made its own findings and a similar recommendation (substituting the figure of three months for that of ninety days) in December 1975.[1]

We are here concerned with petitioner's fitness to continue serving as an attorney. ▆▆ "[T]he purpose of a disciplinary proceeding is not to punish the attorney but to inquire into the moral fitness of an officer of

---

[1]The board adopted its findings by a nine-to-one vote, with one member not voting. The board adopted its recommendations for discipline by an eight-to-two vote, with one member not voting. One member dissenting with respect to the discipline found the recommendation excessive; the other preferred one year of actual suspension without conditions of probation.

the court to continue in that capacity and to afford protection to the public, the courts and the legal profession." (*Clancy* v. *State Bar* (1969) 71 Cal.2d 140, 151 [77 Cal.Rptr. 657, 454 P.2d 329].) For the purposes of these proceedings, petitioner's convictions for perjury conclusively establish that he committed acts under circumstances which together constitute perjury (Bus. & Prof. Code, § 6101). ■ The question of moral turpitude is one of law, and the determination of that issue is this court's responsibility. (*In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97].)

■ We have repeatedly regarded the offense of perjury, which entails a willful false statement, contrary to oath, as to a material matter which one knows to be false, to involve moral turpitude. (See *In re Rothrock* (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]; *In re Allen* (1959) 52 Cal.2d 762, 768 [344 P.2d 609] (soliciting others to commit perjury).) ■ Accordingly, petitioner has engaged in conduct involving moral turpitude, and this court is required by section 6102, subdivision (b) of the Business and Professions Code to discipline him. The severity of such discipline depends upon the gravity of the crime and the circumstances of the case. In examining the circumstances giving rise to the offense in question, we are not restricted to a consideration of the specific elements of the crime, but may look to the whole course of the attorney's conduct which reflects upon his fitness to practice law. (*In re Higbie, supra,* 6 Cal.3d 562, 572.) Therefore, we now proceed beyond the bare conviction to the wider analysis, including the facts of petitioner's case and his explanation of them.

From May 1, 1960, until his suspension on September 1, 1971, petitioner served as the Public Administrator-Public Guardian of Los Angeles County. As public administrator, he bore the primary responsibility for the administration of estates assigned to his office by the probate division of the superior court.

As a representative of an estate, petitioner was authorized by section 772 of the Probate Code to sell the personal property of an estate at a noticed public auction. Additionally, with respect to personal property which would depreciate in value if not disposed of promptly, petitioner as an administrator could elect to sell this property pursuant to Probate Code section 770. That section does not require notice or a public sale, but imposes responsibility upon the administrator for the actual value of the property unless, after he makes a sworn return, and on a proper showing, the court approves the sale. During the period with which we

are concerned, petitioner occasionally made private sales of automobiles belonging to estates assigned to his office, and secured probate court sanction of the transactions by causing to be filed sworn petitions for approval pursuant to section 770 of the Probate Code.

In July 1969, petitioner personally sold to Marin T. Kristovich, his brother, two automobiles from estates which he was then administering as public administrator. In March 1970, petitioner personally sold a vehicle from a third estate which he was administering to George Harry Barclay, an independent contractor-auctioneer who conducted sales of property belonging to estates administered by petitioner's office. After each sale, petitioner wrote a customary handwritten lettergram to the property management division of the public administrator's office, requesting papers to transfer title and informing it of the fact of the sale, the price received, the model and year of the vehicle, and the identity of the purchaser. Contrary to custom, however, petitioner, wishing to conceal the identity of the purchasers, falsely declared in the lettergrams that "Mary Brady," rather than Marin T. Kristovich, and that "Henry George," rather than George Harry Barclay, had purchased the vehicles.

Upon receipt of each lettergram, an employee forwarded to county counsel the facts of the sale and requested counsel to prepare for submission to the probate court a "Return of Sale and Petition for Order Approving Sale of Personal Property" so that petitioner Kristovich would be in compliance with section 770 of the Probate Code. As authorized by an October 1968 letter from Kristovich, county counsel prepared each petition for the signature of Chief Deputy Administrator Harry Koulos, and included in the petition the false information supplied by Kristovich. Each petition expressly stated that it was prepared under penalty of perjury and Deputy Koulos signed each document, "acting for and on behalf of Baldo M. Kristovich, Public Administrator, the petitioner in the foregoing petition." County counsel then submitted each document to the probate court for approval.

■ As the above chronology reveals, although Kristovich did not personally sign the false petitions that were filed with the probate court under penalty of perjury, he was personally responsible for directing the preparation and completion of papers based upon information that he knew to be false. Under the broad terms of Penal Code section 31,[2]

[2]Section 31 provides in relevant part: "All persons concerned in the commission of a crime, whether it be a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed."

Kristovich's direct participation in these events rendered him a principal to the crime of perjury; his criminal convictions on that charge establish his personal responsibility for such misconduct.

Although petitioner intentionally falsified the names of the automobile purchasers, the disciplinary board concluded that, if petitioner had used the true names of the purchasers, he would not have violated any law in selling the automobiles. The board expressly found that the sales were made for fair market value, and that the probate court would have confirmed them had it known the purchasers' true identities. There was no loss to any estate, nor any personal profit to petitioner. Petitioner argues, on the basis of these findings, that no additional discipline is warranted. As we explain, we reject petitioner's contention.

To assess the seriousness of petitioner's misconduct, the disciplinary board attempted to determine petitioner's motives for dissembling. The board found that petitioner believed (albeit erroneously) that the sales to Marin Kristovich and George Harry Barclay possibly violated section 27443 of the Government Code, and that petitioner falsely listed the names of the purchasers in order to prevent discovery of the possible violation by county counsel and the probate court upon submission of the section 770 petitions.

In support of its conclusion, the board relied primarily on two policy statements prepared for petitioner by Chief Deputy Koulos which represented their mutual interpretation of an amendment to Government Code section 27443. The amendment, which became effective in November 1968, made it a misdemeanor for any person holding the office of public administrator, and any deputy, agent or employee of such officer to directly or indirectly purchase property of any estate administered by the public administrator in his official capacity. The State Bar concluded from the policy statements that petitioner and Deputy Koulos interpreted the term "[p]urchases, directly or indirectly . . ." in the statute to encompass the family members of the public administrator, his deputies, agents or employees; and that petitioner also believed that an independent contractor auctioning property from estates administered by the public administrator's office fell within the prohibition.

The two relevant policy statements that apparently sought to deal with section 27443 were sent to the employees of the public administrator's office. A policy statement dated November 13, 1968, expressly prohibited any purchase of estate property by the immediate family of all deputies

and employees. A policy statement dated November 7, 1968, specifically forbade George Barclay, as an independent contractor-auctioneer, from purchasing property from an estate being administered by the office of the public administrator.

Petitioner does not deny that he knew and approved of the content of these statements. He contends, however, that the policies pronounced in them were an undifferentiated blend of legally required and precautionary prohibitions, and that he did not believe the sales to be forbidden by law. Petitioner thus maintains that when he lied he did not intend to deceive the probate court, but "merely" intended to deceive the employees of his office. The purpose of such deception, petitioner suggests, was to maintain department morale, which would have suffered had the employees discovered that policies promulgated by petitioner which prohibited the purchase of estate property by employees' families or by independent contractor-auctioneers apparently did not bind the author of those policies.

In order to justify the apparent violation of his own policy statements, petitioner asserted in an exchange with the State Bar examiner that "[a] directive as a policy is not binding and can be changed at any time by the person who promulgated it, and I'm the one who promulgated it so I just changed it and made an exception as far as [Mr. Barclay] was concerned." Examiner: "Well, was the policy still in effect at that time?" Petitioner: "It was in effect for those that I wanted it to be in effect for."

The State Bar rejected petitioner's assertion that he did not fear a violation of section 27443, finding that petitioner was only partially motivated to conceal the identity of the purchasers by a concern for office morale. It is our duty independently to examine the record, reweigh the evidence and pass on its sufficiency. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 220 [113 Cal.Rptr. 175, 520 P.2d 991].) Having done so, we find no evidence of substance to support petitioner's assertion that he intentionally prohibited transactions which he believed to be legal in order to ensure that illegal transactions would not occur; furthermore, there is no evidence to support the contention that petitioner believed that the instant transactions fell in the class of only prophylactically prohibited sales.

The unambiguous letter to Mr. Barclay belies petitioner's assertion: after stating that ". . . the amendment [to section 27443] makes it a misdemeanor for the public administrator, any deputies, agents, or

employees of such officer to purchase any property directly or indirectly from an estate being administered by this office," the letter *immediately* continues (in a new paragraph), "You are hereby advised that by accepting, as an independent contractor, auction work for the public administrator, you must agree to abide by the provisions of the foregoing section. [¶] Accordingly, you, your employees, and your immediate families are prohibited from purchasing property from an estate being administered by this office." Thus we agree with the State Bar's finding that petitioner's false statements were motivated, at least in part, by a desire to avoid the application of Government Code section 27443.

Moreover, even if we accept petitioner's claim that he did not intend to deceive the probate court, but "merely" intended to deceive the employees in his department, we believe that substantial discipline would still be appropriate. ■■■ We reiterate that the purpose of this inquiry is to determine how best to protect the public's right to representation by attorneys who are worthy of trust. (*In re Bogart* (1973) 9 Cal.3d 743, 749 [108 Cal.Rptr. 815, 511 P.2d 1167].) ■■■ It is not the intended victim of petitioner's deceit that is crucial here, but the fact that petitioner was willing to lie under oath to deceive anyone. ■■■ "An attorney's practice of deceit involves moral turpitude." (*Cutler* v. *State Bar* (1969) 71 Cal.2d 241, 253 [78 Cal.Rptr. 172, 455 P.2d 108].) Such a willingness to deceive another person is, under any circumstances, inconsistent with the proper conduct of a member of the State Bar. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 888 [126 Cal.Rptr. 793, 544 P.2d 929]; *McKinney* v. *State Bar* (1964) 62 Cal.2d 194, 196 [41 Cal.Rptr. 665, 397 P.2d 425].)

■■■ We agree with the State Bar's evaluation that petitioner's methods reveal an indifference to that high standard of open dealings and honesty especially required of an attorney with whom the public has entrusted official responsibilities. As the superior court stated to petitioner at the probation and sentence hearing, ". . . people who occupy prominent positions dealing with public confidence have a duty to not misuse their position and their power, whether it is a detriment to the estate involved or not. The very appearance of it, the likelihood of it appearing, is a matter of public concern, interest, and they need to be protected from it."

Prior to 1955, petitioner's perjury convictions would have resulted in automatic disbarment. Although section 6102 of the Business and Professions Code was amended in 1955 to provide this court with the

alternative of imposing lesser discipline, no intent of the Legislature to reduce professional standards can be derived from this development. (*In re Smith* (1967) 67 Cal.2d 460, 462 [62 Cal.Rptr. 615, 432 P.2d 231].) Rather than recommend disbarment, however, the disciplinary board acknowledges the existence of mitigating factors which warrant a reduction of petitioner's discipline.

Initially, the board recognizes that the sales were in fact legal, and were made for fair market value, without benefit to petitioner nor harm to any estate. Thus, petitioner's conduct does not fall in the group of base offenses involving intentional dishonesty for purposes of personal gain. Next, the board acknowledges petitioner's hitherto unblemished past history of distinguished and honorable public service, and that multiple witnesses testified as to his outstanding character for truth, honesty and integrity.

Petitioner's conduct during the period of probation following his diagnostic commitment to the department of corrections has been exemplary. After petitioner satisfactorily completed two of the five years of probation to which he had originally been sentenced, and paid the fine assessed as a condition of that probation, the trial court deemed unnecessary any further supervision. Therefore, on December 30, 1974, the court vacated and dismissed petitioner's perjury convictions. (Pen. Code, § 1203.4.)

Moreover, since his conviction and sentence, petitioner has established a new practice of law, earning the trust and confidence of new clients. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) It has now been seven years since the date of petitioner's decision to falsify information, and no new allegation of misconduct has arisen.

Taking into account all these facts and circumstances, it is ordered that petitioner be suspended from the practice of law for three years; that execution of such suspension be stayed; and that he be placed on probation for that period upon condition that he shall be suspended from the practice of law for the first three months thereof and that he comply with the conditions of probation recommended in the resolution of the board of December 12, 1975,[3] except that petitioner will not be

---

[3]The conditions stated in the above resolution include filing reports with the State Bar certifying to specified matters, and, except to the extent prohibited by specified privileges, answering inquiries by board representatives relating to compliance with the

required to certify in his first quarterly report to the State Bar that he has read the State Bar Act and the Rules of Professional Conduct; in lieu of that requirement, we further order as a condition of probation that within one year of the effective date of this order he pass the Professional Responsibility Examination. (See *Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929].)

This order is effective 30 days after the filing of this opinion.

terms of probation. Compliance with the provisions of rule 955, California Rules of Court, is not required.