[L.A. No. 30727. Nov. 17, 1977.]

RICK E. ALLEN, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

James B. Russell and Pray, Price, Williams & Russell for Petitioner.

Herbert M. Rosenthal and Scott J. Drexel for Respondent.

**OPINION**

**THE COURT.\***—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar that Rick E. Allen be disbarred.

Allen was admitted to practice in 1964. In a prior proceeding we suspended him for two years commencing in June 1974, for commingling of a client's funds and preparing fictitious transactions for the purpose of deceiving the court, misconduct similar to that involved in the instant case. (L.A. 2090; Bar Misc. 3592.)

In the present proceeding, both the board and the local committee unanimously recommended disbarment. The board found: (1) that Allen defrauded a client, Jeanice Carroll, and misappropriated her funds; (2) that Allen also deceived Jeanice Carroll while pursuing a scheme to transfer her real property for purposes of defrauding creditors; and (3)

---

\*Before Bird, C. J., Tobriner, J., Mosk, J., Clark, J., Richardson, J., Manuel, J., and Thompson (Homer B.), J.†

†Assigned by the Chairperson of the Judicial Council.

that Allen, while representing his sister, Janice Lesko, used deceit to obtain an intrabank transfer of funds held in the name of a deceased person.

### THE CARROLL MATTERS

In August 1969, Allen was retained by Jeanice Carroll to handle matters arising out of the death of her husband, James Carroll. James died leaving substantial debts for which Jeanice was a joint obligor. Jeanice received approximately $80,000 in life insurance proceeds which Allen persuaded her to transfer to him as trustee. Allen paid about $15,000 to persons designated by Mrs. Carroll. The remaining $65,000 is the subject of the first charge against Allen.

Allen devised a scheme to hide the remaining insurance proceeds from creditors. Under this plan, Allen would purportedly invest the funds in worthless stock and obtain cancelled checks to convince creditors that the money had been lost in bad investments. Checks totaling $60,000 were actually written to International Chemical Corporation (International). The record, however, is unclear as to what Allen received in return for that sum. There is some evidence that he received, as trustee, 100,000 valueless shares of International; there is other evidence that he received 75,000 shares of stock in Grimes, Inc. (Grimes). The remaining $5,000 was retained by Allen for attorney's fees.

According to Mrs. Carroll, Allen represented to her that the money would not leave the trust account. She understood that Allen would merely set up on paper a fictitious transaction which would indicate that the money had been invested in stock which subsequently became worthless. None of the $65,000 has been returned to her, although she testified that she demanded its return on numerous occasions. Whenever she so demanded Allen would become indignant saying that she should not question his integrity and claiming that he would pay her back from various pending deals.

Allen testified that the $60,000 paid to International actually represented payment for 75,000 shares of Grimes, a company controlled by International. The transaction was allegedly planned by Allen and one William Montgomery, the controlling shareholder of International and president of Grimes, so that Montgomery could dispose of some of his own Grimes stock without openly violating restrictions on stock sales by

corporate "insiders." The 75,000 shares of Grimes placed in Allen's trust account were later to be sold on the open market at a large profit with Montgomery's help. Apart from the checks made out to International, there was no documentation of the Grimes stock purchase. Grimes stock was of little value at the time of the transaction and is now worthless.

Allen produced three witnesses to corroborate his testimony that Mrs. Carroll knew of and consented to the Grimes stock purchase. None of the three fully substantiated Allen's position regarding the basic transaction.

The second serious breach involved the conveyance of Mrs. Carroll's home to Mr. Montgomery, who was supposed to thereupon immediately convey to Mrs. Carroll's mother. Under this scheme, devised by Allen, Mrs. Carroll would transfer her house to Montgomery for worthless stock, again an effort to mislead creditors into believing the transaction was bona fide.

Montgomery failed to retransfer the home to Mrs. Carroll's mother and proceeded to borrow against the property for his own benefit. Mrs. Carroll demanded that Allen secure the return of the house on numerous occasions. Finally, she obtained another attorney who filed a quiet title action based on fraud and regained title to her home.

In a deposition taken in the quiet title action, Allen admitted that he intentionally deceived Mrs. Carroll. He testified that while he had told Mrs. Carroll that Montgomery would transfer the house to her mother, he had no intention of carrying out that part of the plan.

### THE LESKO MATTER

On August 13, 1973, Janice Lesko, Allen's sister, shot and killed her husband, Leo Lesko. The day after his death, an intrabank transfer order was "found" which had allegedly been signed in blank by Leo Lesko.

The transfer order was subsequently filled out by unknown persons for the purpose of transferring all cash from Leo Lesko's San Francisco account to an account in southern California. On August 15, without informing the bank officer of the death of the maker, Allen presented this transfer order to a bank in Costa Mesa. Relying on the authenticity of the order, the officer transferred the funds from San Francisco to Costa Mesa.

Allen does not deny these events. He admits he intended to deceive the bank officer. There is no evidence that the transfer placed the funds in jeopardy.

DISPOSITION

■ Allen asserts that the evidence regarding the Carroll matters is conflicting and insufficient to sustain the charges. After a thorough review of the record, we conclude that there is no merit to this contention.

■ This court must independently examine the record, reweigh the evidence and pass on its sufficiency. (*In re Kristovich* (1976) 18 Cal.3d 468, 475 [134 Cal.Rptr. 409, 566 P.2d 771]; *Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 220 [113 Cal.Rptr. 175, 520 P.2d 991].) ■ The burden is on Allen to show that the findings are not supported by the evidence or that the recommendation is erroneous or unlawful. (*Magee* v. *State Bar* (1975) 13 Cal.3d 700, 708 [119 Cal.Rptr. 485, 532 P.2d 133]; *Younger* v. *State Bar* (1974) 12 Cal.3d 274, 284-285 [113 Cal.Rptr. 829, 522 P.2d 5].) ■ We give great weight to the findings of the local committee, since that tribunal saw the witnesses and heard the testimony. (*Magee* v. *State Bar, supra,* 13 Cal.3d 700, 708; *Lewis* v. *State Bar* (1973) 9 Cal.3d 704, 712-713 [108 Cal.Rptr. 821, 511 P.2d 1173].) ■ The findings here are reinforced by their unanimous adoption by the board following independent review of the record. (See *Magee* v. *State Bar, supra,* 13 Cal.3d 700, 708.)

With respect to the first charge of defrauding Mrs. Carroll and misappropriating her funds, Allen contends he actually purchased Grimes stock for her benefit with her consent. This contention is not supported by the evidence. First, while Allen's testimony on the value of Grimes stock varied, at one point he admitted that the Grimes stock may have been worth less than 10 cents a share at the time of purchase. It is highly improbable that Allen convinced Mrs. Carroll to pay $60,000 for stock which he admits may have been worth very little at the time of purchase. Second, Allen did not document the Grimes stock purchase, another factor casting doubt on his story. (*Walter* v. *State Bar* (1970) 2 Cal.3d 880, 889 [87 Cal.Rptr. 833, 471 P.2d 481].) Third, the three witnesses relied upon by Allen did not provide substantial support for his position. Finally, Allen failed to account for the $60,000. This fact, together with his improbable explanation for its loss, substantiates the conclusion of the board that Allen misappropriated the funds. ■

"Misappropriation of a client's property is a gross violation of general morality likely to undermine public confidence in the legal profession and therefore merits severe punishment." (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858]; see *Walter* v. *State Bar, supra,* 2 Cal.3d 880, 891.)[1]

█ The findings of the board regarding the house transaction are also amply supported. In his deposition in the quiet title action, Allen admitted his intent to deceive his client and her creditors. His belated claim that he perjured himself in that deposition in order to help Mrs. Carroll regain her property is neither convincing in the light of all the other evidence nor justifiable.[2] █ Participating in a scheme to defraud creditors is a crime (Pen. Code, § 531) and properly subjects an attorney to disciplinary action. (*Yokozeki* v. *State Bar, supra,* 11 Cal.3d 436, 445, fn. 4; see also *Townsend* v. *State Bar* (1948) 32 Cal.2d 592, 597-598 [197 P.2d 326].)

█ Regarding the final charge of deceit, inducing the intrabank transfer, Allen admits the intent to deceive and the resulting deception but claims no harm was done. There is no merit in this defense.

Actual injury or loss is not a prerequisite to discipline for fraudulent or deceitful acts. (Bus. & Prof. Code, §§ 6106,. 6128; *Foote* v. *State Bar* (1951) 37 Cal.2d 127, 129 [230 P.2d 617].) The purpose of a disciplinary proceeding is to "determine not the extent of the damage caused by the attorney but whether his conduct was unprofessional." (*Heavey* v. *State Bar* (1976) 17 Cal.3d 553, 558 [131 Cal.Rptr. 406, 551 P.2d 1238.].) █ The

[1]Even if we accept Allen's story, he violated rule 9 of the Rules of Professional Conduct in effect prior to January 1, 1975 (3B West's Ann. Bus. & Prof. Code (1974 ed.) foll. § 6076) which required him to retain his client's funds in a trust account unless he obtained written direction from the client. (The subject matter of rule 9 is now incorporated in rule 8-101 of the Rules of Prof. Conduct, eff. Jan. 1, 1975 [Deering's Cal. Codes Ann. Rules (1976 ed.) at pp. 625-626].) Furthermore, even if, as Allen asserts, Mrs. Carroll knew of, and consented to, the actual stock purchase, the board concluded, and we agree, that the purpose of this transaction was to defraud Mrs. Carroll's creditors. As discussed *infra,* participating in a scheme to defraud creditors is a crime and properly subjects an attorney to disciplinary action.

[2]When Allen testified before the local committee, he stated that he had lied during his deposition in the quiet title action when he testified that he had intentionally deceived Mrs. Carroll into believing Montgomery would retransfer the house to Mrs. Carroll's mother. He stated that he had so falsely testified because he understood that in order for Mrs. Carroll to recover her property it was necessary to show that she had been deceived. Allen, it appears, offered this admission of "perjury" with hopes of thereby defusing the charge against him that he had deceived his client Mrs. Carroll. Apparently Allen was not concerned with the fact that lying under oath is a crime (Pen. Code, §§ 118, 124).

intentional and successful deception of a bank officer is clearly conduct so unprofessional as to warrant discipline.

■ Allen has failed to overcome the findings of the board. While the evidence justifies disbarment, we consider any mitigating circumstances revealed by the record or Allen. (*Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 450.) There are, however, no such mitigating circumstances in this proceeding.

Allen contends he has been prejudiced by delay in bringing this proceeding. While delay has been considered a mitigating factor (*Yokozeki* v. *State Bar, supra,* 11 Cal.3d at p. 450), the allegation of prejudicial delay is unsupported by the evidence. Although the acts complained of were committed in 1969 and 1973, Mrs. Carroll did not complain to the State Bar until February 1974.

We conclude, in view of the gravity of these matters and in the light of all the circumstances of the case, that disbarment, as unanimously recommended by both the board and local committee, is the appropriate discipline.

It is therefore ordered that Rick E. Allen be disbarred from the practice of law in this state and that his name be stricken from the roll of attorneys. It is further ordered that he comply with rule 955 of the California Rules of Court and that he perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of this order. This order is effective 30 days after the filing of the opinion.