[S.F. No. 23884. Feb. 28, 1979.]

JOSEPH A. JACKSON, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

510

COUNSEL

Carl B. Shapiro and Shapiro, Shapiro & Shapiro for Petitioner.

Herbert M. Rosenthal and Darlene Marie Azevedo for Respondent.

OPINION

THE COURT.—This is a proceeding to review a recommendation of the Disciplinary Board of the State Bar of California that petitioner be disbarred from the practice of law in this state. The local administrative committee unanimously recommended that petitioner be suspended from practice for five years, with two years' actual suspension and the remainder on probation.

The board adopted substantially all of the findings of the local committee, concluding that petitioner had (1) commingled his general account with client funds, (2) abandoned a client by wilfully failing to provide the legal services he was retained to perform, (3) filed false accountings with the probate court in two separate estate probate matters, with intent to deceive the court, and (4) wilfully misappropriated client funds in three separate instances.

Petitioner, now 65 years of age, was admitted to practice law in this state on December 16, 1941, and has not previously been the subject of disciplinary proceedings. He characterizes his practice as a "neighborhood" general family practice which handles a large volume of "small" cases and operates primarily in San Francisco's "outer Mission" district with a branch office in San Rafael. The board's findings may be summarized as follows:

1. ROSE KOWALKOWSKI ESTATE MATTER

In March 1969, petitioner was retained to represent the estate of Rose Kowalkowski in probate proceedings. He received funds on behalf of the estate and made disbursements, some of which were not authorized by the court. On June 21, 1974, petitioner represented to the court that he held $20,294.90 on account for the estate, though at no time since January 8, 1974, did he hold funds sufficient to discharge that obligation. Decedent's heirs repeatedly demanded that petitioner distribute the

assets of the estate; however, the demands were either ignored or met by excuses. The heirs eventually hired an attorney who negotiated an agreement whereby petitioner's home was given as security for repayment of the misappropriated funds. Petitioner did not satisfy his obligation to the estate, however, until immediately prior to a scheduled trustee's sale of his home in May 1976.

### 2. JOSEPHINE KOWALKOWSKI ESTATE MATTER

In November 1970, petitioner was retained to represent the estate of Josephine Kowalkowski. He failed to perform the agreed services, however, and by May 1975, the only action he had taken in the matter was to file papers for appointment of an administrator. He delayed distribution of the assets of the estate until the eve of the trustee's sale of his residence.

### 3. CHARLES GILLY ESTATE MATTER

In March 1970, petitioner was retained to represent the estate of Charles Gilly. From March to May of that year he received trust funds on behalf of the estate in the amount of $47,496.30 and made disbursements for costs of administration and partial distribution to certain heirs of the estate, without court approval, through July 1973. Commencing in December 1971, petitioner's trust account balance fell below the amount he should have had on deposit for the Gilly estate and on January 5, 1973, the account was overdrawn, though there should have been on account $21,305.87. Petitioner represented to the probate court in August 1973, that he held in trust $28,446.30 for the Gilly estate though at no time from January 5, 1973, to September 1973, did he hold amounts sufficient to discharge his obligation to the estate. By October 15, 1976, the estate had not been closed, nor had the heirs received their full share of the assets despite repeated demands for distribution.

### 4. SEIDLER AND HOLZWARTH MATTER

Petitioner was retained to represent Cary Seidler and Wendy Seidler Holzwarth in a probate matter. In September 1978, petitioner received $16,991.15 in trust for Cary and in November and December he received $18,811.14 for Wendy. After making some disbursements on behalf of his clients, his trust account became overdrawn, though substantial sums should have been on deposit.

In addition, the board found that petitioner has maintained a practice of commingling personal and client funds received by his law firm in a single bank account designated by him as a "trust fund."

Petitioner does not dispute the board's findings in any material respect and our review of the record discloses that the findings are amply supported by the evidence.

Petitioner does not deny that on numerous occasions his trust account was either overdrawn or the balance fell far below the amount he should have had on account. Nor does he dispute that he refused to make payments to the heirs of various estates when they were due. ■ Evidence that petitioner persistently refused to account to the heirs in the face of repeated demands to do so justifies a finding of wilful misappropriation. (*Brody* v. *State Bar* (1974) 11 Cal.3d 347, 350 [113 Cal.Rptr. 371, 521 P.2d 107].) ■ Even if petitioner's misconduct were not wilful and dishonest, gross carelessness and negligence constitute a violation of an attorney's oath faithfully to discharge his duties and involve moral turpitude. (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 978 [126 Cal.Rptr. 801, 544 P.2d 937].)

The finding that petitioner filed false accountings to the probate court with intent to deceive is supported by the evidence. An attorney has an unqualified duty to refrain from acts which mislead the court. (Bus. & Prof. Code, §§ 6068, 6128, subd. (a).) ■ The representation to a court of facts known to be false is presumed intentional and is a violation of the attorney's duties as an officer of the court. (*Id.*, §§ 6068, 6103; see *Pickering* v. *State Bar* (1944) 24 Cal.2d 141, 144 [148 P.2d 1].) Although petitioner has denied knowledge of the false accounting, reasonable inferences raised by the evidence would support a finding that he intended to deceive the court.

Finally, petitioner does not dispute the finding that he commingled personal and client funds. Concluding as we do, that the board's findings should be upheld, we next consider whether petitioner's professional misconduct warrants the discipline recommended. Petitioner maintains that the board's recommendation of disbarment is too severe in light of the mitigating circumstances. We agree.

■ The findings of the board are entitled to great weight; however, we may adopt its conclusion as to the guilt of an accused attorney and still revise its recommendation regarding the discipline to be imposed. (*Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 980 [126 Cal.Rptr. 801, 544 P.2d 937].)

The final word on discipline rests with this court. (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) The board was correct in declaring that disbarment is an appropriate penalty for misappropriation of client funds (*Oliver* v. *State Bar* (1974) 12 Cal.3d 318, 321 [115 Cal.Rptr. 639, 525 P.2d 79]), but the determination of the sanctions to be imposed must turn on a "balanced consideration of all the relevant factors, including any mitigating circumstances." (*Doyle,* at p. 979 of 15 Cal.3d.) Our principal concern is always the protection of the public, the preservation of confidence in the legal profession, and the maintenance of the highest possible professional standard for attorneys. (*Demain* v. *State Bar* (1970) 3 Cal.3d 381, 388 [90 Cal.Rptr. 420, 475 P.2d 652].)

■ Petitioner's conduct clearly demands discipline in order to protect both the public and the profession; however, we note the following factors militating against his disbarment. He has no prior disciplinary record, and has served in a presumably satisfactory capacity as a "neighborhood lawyer" for 37 years. (*Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) He has made partial restitution of the unlawfully misappropriated funds. (*Yokozeki* v. *State Bar* (1974) 11 Cal.3d 436, 450 [113 Cal.Rptr. 602, 521 P.2d 858].) During part of the relevant period he was suffering from medical problems and had entrusted the maintenance of his office to an associate who subsequently committed suicide; the death placed petitioner under great emotional strain. (*Doyle* v. *State Bar, supra,* 15 Cal.3d 973, 979.) We are also cognizant of the difficulties faced by practitioners who handle a large volume of cases for small fees. (*Vaughn* v. *State Bar* (1972) 6 Cal.3d 847, 857-858 [100 Cal.Rptr. 713, 494 P.2d 1257].) Finally, petitioner is 65 years of age and the loss of his livelihood would create a great hardship for him and his family. (*In re Jones* (1971) 5 Cal.3d 390, 401 [96 Cal.Rptr. 448, 487 P.2d 1016].) While we do not condone petitioner's conduct, in view of the foregoing mitigating circumstances we conclude that the protection of the public and the courts does not require his disbarment.

Accordingly, it is ordered that petitioner be suspended from the practice of law for five years; that execution of the order of suspension be stayed; and that he be placed on probation for that period on condition that he be suspended for the first three years thereof, and if he has not passed the Professional Responsibility Examination within that time, for such additional time until he passes that examination. (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 891, fn. 8 [126 Cal.Rptr. 793, 544 P.2d 929]);

and that he comply with the additional conditions of probation recommended by the local administrative committee on August 22, 1977.

This order is effective 30 days after the filing of this opinion.

**RICHARDSON, J.**—While the court routinely and quite properly speaks with one voice in State Bar disciplinary matters, I find that I am unable to join my colleagues in their disposition of this matter and respectfully dissent.

In my view petitioner's conduct over a period of several years, as described in the findings of the local administrative committee and the Disciplinary Board of the State Bar, reveals a serious and habitual pattern of misconduct and a flagrant disregard of professional ethics and responsibilities. He was found in several instances to have commingled his client's and his personal funds. In at least one instance he abandoned his client. He wilfully misappropriated the funds of three clients. Finally, he falsified accountings which were filed with the probate court in two separate estate matters. Individually, each of these offenses is very serious. In combination, they should require petitioner's disbarment for the protection of the public.

The mitigating force of petitioner's restitution of most of the misappropriated funds is lessened when it is observed that the restitution was made under the pressure of pending disciplinary proceedings. (*In re Lyons* (1975) 15 Cal.3d 322, 326 [124 Cal.Rptr. 171, 540 P.2d 11].) Repeated misuse or misappropriation of a client's trust funds is grounds for disbarment in the absence of strong mitigating circumstances. (*Oliver* v. *State Bar* (1974) 12 Cal.3d 318, 321 [115 Cal.Rptr. 639, 525 P.2d 79]; *Lyons, supra,* at p. 326.) Furthermore, an attorney who knowingly files false accountings with a probate court misleads the judge, the public and its officials, the personal representative, the beneficiaries, heirs, and creditors of the decedent. No circumstances can ever justify this grave misconduct.

I am unable to equate petitioner's performance with the most minimal standards of professional conduct, and responsibility, and for the protection of the public believe that he should be disbarred.

Clark, J., concurred.

Petitioner's application for a rehearing was denied April 26, 1979.