[L.A. No. 31441. Jan. 25, 1982.]

L. FORREST PRICE, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

538

**COUNSEL**

George R. McClenahan and Harry V. McGahey for Petitioner.

Herbert M. Rosenthal, Truitt A. Richey, Jr., and Marie M. Moffat for Respondent.

OPINION

THE COURT.*—We review a recommendation that L. Forrest Price be disbarred for acts involving moral turpitude. His misconduct as a prosecutor included (1) altering evidence in a criminal trial, and (2) attempting to prevent discovery of his misconduct by (a) discussing the alteration with the judge in the absence of opposing counsel, and (b) communicating to the defendant—after conviction but before sentencing—an offer to seek favorable sentencing in exchange for defendant's agreement not to appeal the conviction.

After a hearing on August 17, 1979, the State Bar panel recommended disbarment. The recommendation was based on a finding that petitioner wilfully violated Business and Professions Code section 6131, subdivision (b),[1] which provides that a prosecutor who, having prosecuted, takes valuable consideration from or on behalf of a defendant on an agreement relating to the defense, "is guilty of a misdemeanor and, in addition to the punishment prescribed therefor, shall be disbarred."[2]

The panel made a second recommendation of suspension for three years, with execution stayed on conditions that included one year of ac-

---

*Before Bird, C. J., Mosk, J., Richardson, J., Newman, J., Kaus, J., Broussard, J., and Tobriner, J.†

[1]All section references are to the Business and Professions Code unless otherwise noted.

[2]In this proceeding it was conceded that "shall be disbarred" does not restrict this court's power to order suspension in lieu of disbarment. We agree. Prior to 1955 the only other situation affected by a legislative prescription of automatic disbarment was following an attorney's conviction of a crime involving moral turpitude. (See *In re Kristovich* (1976) 18 Cal.3d 468, 476 [134 Cal.Rptr. 409, 566 P.2d 771]; *In re Collins* (1922) 188 Cal. 701, 708 [206 P. 990, 32 A.L.R. 1062]; §§ 6101, 6102.)

In 1955 sections 6101 and 6102 were amended to eliminate the rule of automatic disbarment in that more frequently occurring situation. The Legislature did not, we believe, intend to retain automatic disbarment for the section 6131 offense and for no other. It seems likely that the drafters simply overlooked the automatic disbarment provision in section 6131, which had not been interpreted in any reported decision, when they set out to eliminate the rules of automatic disbarment in 1955. Accordingly, disbarment will not be deemed mandatory on a finding of violation of section 6131.

---

†Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

tual suspension, probation, and psychiatric or psychological counseling during the probation period. The recommendation was based on findings that petitioner had wilfully violated section 6103 (violation of attorney's oath or duties); section 6128, subdivision (a) (deceit or collusion with intent to deceive court or any party); section 6106 (commission of act involving moral turpitude, dishonesty or corruption); and these two Rules of Professional Conduct: rule 7-105 (1) (misleading judge or jury by artifice or false statement of fact or law) and rule 7-107 (A) (suppressing evidence that attorney or client has legal obligation to reveal or produce).

A rehearing was held on March 7, 1980. Petitioner challenged the adequacy of the showing that he violated section 6131, subdivision (b) and also argued that his heavy workload and accompanying fatigue at the time of his misconduct were mitigating factors that lessened his culpability. Because of those arguments the principal referee filed a dissenting decision and recommendation, withdrawing his earlier conclusion that petitioner had violated section 6131, subdivision (b) and should be disbarred. The dissenter agreed with the other two referees, however, insofar as they found that petitioner had violated sections 6103, 6106, 6128, subdivision (a), and Rules of Professional Conduct, rules 7-105 (1) and 7-107 (A). Accordingly he called for adoption of the majority's second recommendation (suspension).

The review department of the State Bar adopted the panel's two-to-one recommendation of disbarment by vote of eight to five. The department recommended disbarment even though it refused to adopt the panel's findings that petitioner had violated section 6131, subdivision (b) and Rules of Professional Conduct, rules 7-105 (1) and 7-107 (A). Seven members of the majority noted that they voted for disbarment because whether or not petitioner violated section 6131, subdivision (b) he violated section 6106. The five dissenters viewed disbarment as excessive but were divided as to the appropriate discipline. All five recommended suspension for three years, with two adopting the panel's recommendation of a stay of execution and probation with actual suspension for one year, two favoring actual suspension for three years, and one favoring actual suspension with credit for the approximately eighteen months during which petitioner did not practice law after losing his job as prosecutor following disclosure of his misconduct to his supervisors.

He had been admitted to practice in 1965. At the time of the events that gave rise to this proceeding he had been a deputy district attorney in San Diego for nearly 12 years and senior trial attorney for approximately 1 1/2 years.

In April 1976 he was assigned the responsibility of prosecuting Stewart, charged with two murders. Corbin was appointed counsel for Stewart in May and served through trial and sentencing, and Stewart represented himself as cocounsel throughout. Trial began in October. Corbin made at least two pretrial requests for discovery of all pertinent matters from the office of the district attorney, and petitioner assured Corbin that all such information had been furnished. During cross-examination, however, Corbin discovered that a cab driver whose testimony placed Stewart at or near the scene of one of the alleged murders in 1973 had prepared a "trip ticket" containing entries of dates, times, and places of passenger pickups and deliveries at or about the time of the alleged murder. The ticket had not been provided to the defense, though it had been in the possession of the San Diego Police Department since May 1974.

Corbin requested a copy of the ticket from petitioner, who said he did not have one. Petitioner then obtained a copy from the cab driver on completion of the driver's testimony and during a recess. It contained entries that were inconsistent with the driver's testimony as to the time and place he had picked up Stewart. Time and place were not in themselves important to the People's case. They were important, though, in the sense that discrepancies between entries prepared in 1973 and the driver's testimony in 1976 could be used to impeach his credibility as a witness.

Petitioner altered his copy of the ticket—by changing the time and place of a customer fare relevant to the driver's carriage of Stewart—so that it became consistent with the driver's testimony. He then destroyed the original copy, after photocopying, and supplied a photo of the altered copy to Corbin, representing it to be true and genuine. The aim was to mislead Corbin and to prevent his using the original or a true copy to impeach the driver.

Corbin then sought the court's aid in securing the original of the ticket, and petitioner agreed to produce it. But the original was not immediately obtainable from the police; so he produced another copy, unaltered, obtained from the cab company. Corbin then noted the alter-

ation and demanded in court that the original be produced. Petitioner agreed to produce it on the next court day, a Tuesday following a three-day weekend. On that day before the court reconvened petitioner requested a private meeting in chambers with the judge. Their discussion was not reported or recorded, and Corbin was not present. Petitioner told the judge he had altered his copy before supplying it to Corbin, but the judge apparently took no action in response.

Petitioner then gave the original ticket to Corbin. At a meeting later that day attended by petitioner, Corbin, and the judge, petitioner sought unsuccessfully to prevent the admission into evidence of the altered copy. His responsibility for the discrepancy between the two versions of the ticket was not revealed to Corbin during that meeting, or to the jury or anyone else (except the judge) during trial.

The jury returned a verdict of second degree murder in November 1976. Before expiration of the 60-day period for filing a notice of appeal and before sentencing, petitioner contacted Stewart in jail. He sought and received Stewart's promise to refrain from filing an appeal of his conviction in exchange for petitioner's promise to seek a more favorable sentence and out-of-state incarceration. Corbin was neither notified of nor present at the meeting. Petitioner testified that his chief reason for wanting Stewart not to appeal was to keep petitioner's misconduct in altering the ticket from being revealed. Despite their agreement, however, Stewart filed a timely appeal.

In July 1977 petitioner's efforts to secure a more favorable sentence failed. Increasingly concerned that his misconduct would come to light on appeal, he revealed his alteration of the ticket to a superior in the district attorney's office, hoping that people in the office would be able to "straighten it out" by securing a more favorable sentence for Stewart. Instead petitioner was suspended from his job, and the matter of his misconduct was referred to the Attorney General. Against advice of counsel he submitted to interrogation by the Attorney General's investigators.

Later that month the Attorney General charged petitioner with a felony under Penal Code section 134. The information, filed in October, alleged: "On or about October 7, 1976, [petitioner] did prepare a false record with intent to produce it and allow it to be produced for a deceitful purpose, as genuine or true, upon a trial authorized by law, in violation of Penal Code section 134." Nonetheless, after jury trial he

was acquitted in March 1978. There is no indication that he was ever charged with a misdemeanor under Business and Professions Code section 6131.

He then sought reinstatement to his former job. The Civil Service Commission ordered him reinstated, but in a rehearing requested by the district attorney that order was vacated during the summer of 1978.

After suspension he signed on as a grocery store manager but following the initial civil service ruling resigned, thinking he would be returning to the district attorney's office. When it became apparent he would not be reinstated he served as a service station manager until the end of 1978.

In January 1979 he recommenced law practice and opened an office. He has remained in practice, handling civil matters (e.g., personal injury, worker's compensation, probate) as well as defense in criminal cases.

## MITIGATION

There is no record of prior discipline. Petitioner cooperated fully with State Bar investigators and was remorseful throughout the proceedings. He stipulated to the essential facts of his misconduct prior to the panel's hearing. He had been under mental and emotional stress for several years because of a heavy caseload and regular work weeks of 57 to 60 hours. In 1975, the year before the events leading to these proceedings, he sought to reduce stress by requesting rotation to another department within the district attorney's office; but the request was denied. Work-related stress was viewed as a causative factor in his misconduct by two deputy district attorneys who worked with him. The presiding referee thought the stress lessened his culpability.

He presented seven character witnesses who testified to his reputation for community involvement, integrity, and trustworthiness. He urges that he has made substantial progress in rehabilitating himself. As a private practitioner he can regulate new stresses by choosing his cases and scheduling his workload. He was examined on June 26, 1981, by a psychiatrist who found him free of psychiatric disorders and in need of no counseling.

VIOLATIONS

■ In deciding what commands of the State Bar Act or Rules of Professional Conduct he violated we may make independent findings of fact. (*Weir* v. *State Bar* (1979) 23 Cal.3d 564, 570 [152 Cal.Rptr. 921, 591 P.2d 19].) Generally we give weight to a hearing panel's findings, since the members often are in a better position than we to resolve conflicts in testimony. (*Allen* v. *State Bar* (1977) 20 Cal.3d 172, 177 [141 Cal.Rptr. 808, 570 P.2d 1226].) The burden is on petitioner to overcome the presumption that favors findings supported by substantial evidence. (*In re Wright* (1973) 10 Cal.3d 374, 377 [110 Cal.Rptr. 348, 515 P.2d 292].)

*Business and Professions Code section 6131, subdivision (b)*

Petitioner was charged with violating section 6131, subdivision (b), which provides: "Every attorney is guilty of a misdemeanor and, in addition to the punishment prescribed therefor, shall be disbarred ... [w]ho, having himself prosecuted ... any action or proceeding in any court as district attorney or other public prosecutor, afterwards, directly or indirectly, advises in relation to or takes any part in the defense thereof, as attorney or otherwise, or who takes or receives any valuable consideration from or on behalf of any defendant in any such action upon any understanding or agreement whatever having relation to the defense thereof."

The panel found (1) that petitioner received Stewart's promise to abandon an appeal in exchange for petitioner's promise to seek more favorable sentencing for Stewart; (2) that petitioner sought the promise for concerns personal to himself that amounted to a valuable consideration, "to wit, concealing or minimizing the fact that he had altered a document during the course of the trial and that this had not been revealed to ... Corbin or the defendant"; and (3) that by those actions petitioner wilfully violated section 6131, subdivision (b). On reconsideration, one referee concluded there had been no violation. Subsequently the 13 review-department members voted unanimously, though without comment, to delete (1) the finding that the agreement amounted to a valuable consideration, and (2) the conclusion that petitioner violated section 6131, subdivision (b). The State Bar nonetheless contends that petitioner is guilty of the violation.

█ In State Bar proceedings guilt must be established by convincing proof to a reasonable certainty, and reasonable doubts must be resolved in favor of the accused. (*Emslie* v. *State Bar* (1974) 11 Cal.3d 210, 226 [113 Cal.Rptr. 175, ·520 P.2d 991].) █ Petitioner argues that his guilt under section 6131, subdivision (b) is precluded by reasonable doubt as to his state of mind at the time of the postconviction meeting where he asked Stewart to abandon the appeal. Prior to then Stewart had called a deputy working under petitioner and said that he (Stewart) had committed perjury in another murder trial and wished to speak to a prosecutor about it. Petitioner argues that the request to speak with a prosecutor gave petitioner a dual purpose for contacting Stewart and that the dual purpose creates a reasonable doubt as to whether petitioner had the requisite state of mind, i.e., an intent to bargain for valuable consideration in exchange for assistance to a defendant he had prosecuted. The argument lacks merit.

Whatever other reasons he may have had for communicating with Stewart, he admitted that the aim of requesting abandonment of appeal was to protect his career and repute by preventing disclosure of his misconduct in altering the ticket. Thus no reasonable doubt exists that he had the state of mind required to find that he violated section 6131, subdivision (b).

This court rejects review-department rulings based on erroneous conclusions as to facts. (See *In re Fahey* (1973) 8 Cal.3d 842, 851 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465].) The department did not explain its elimination of the finding that petitioner violated section 6131, subdivision (b). From our review of the record we conclude that the ruling was erroneous. Petitioner received valuable consideration from the defendant on an agreement relating to the defense in a case he had prosecuted, thereby violating section 6131, subdivision (b). The effect on the sanction to be imposed is discussed below.

*Other Violations*

█ The panel also found him guilty of acts of moral turpitude (§ 6106), violating his attorney's oath and duties (§ 6103), suppressing evidence that an attorney has an obligation to reveal or produce (Rules Prof. Conduct, rule 7-107, subd. (A)), and misleading the judge, jury, and/or other party (§ 6128, subd. (a), Rules Prof. Conduct, rule 7-105, subd. (1)). Without explanation the review department eliminated the panel's conclusion that petitioner committed those violations. However,

seven members stated in their recommendation that petitioner's conduct violated section 6106, and all thirteen voted to adopt the findings from which the panel had concluded that the other laws also were violated. Petitioner's own stipulation provides substantial evidence to support the panel's findings, which he does not challenge here. Thus he has failed to overcome the presumption in favor of the findings. (*In re Wright, supra,* 10 Cal.3d at p. 377.) We therefore adopt them and hold that he violated sections 6103, 6106, 6128, subdivision (a), as well as Rules of Professional Conduct, rules 7-105 (1) and 7-107 (A).

### APPROPRIATE DISCIPLINE

█ Concluding that the panel's findings as to guilt should be upheld, we next consider whether petitioner's misconduct warrants the discipline recommended. He contends that the panel's and review department's recommendation of disbarment is too severe in light of the mitigating circumstances. We agree. █ Though substantial weight is given to the State Bar's recommendations, we exercise independent judgment in determining the discipline. (*Toll* v. *State Bar* (1974) 12 Cal.3d 824, 831 [117 Cal.Rptr. 427, 528 P.2d 35].) We may adopt conclusions as to guilt and yet revise the recommendations regarding discipline. (See *Jackson* v. *State Bar* (1979) 23 Cal.3d 509, 513 [153 Cal.Rptr. 24, 591 P.2d 47]; *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 980 [126 Cal.Rptr. 801, 544 P.2d 937].)

While disbarment appears prescribed by section 6131 (cf. fn. 2, *ante*) and is permissible for any act involving moral turpitude (§ 6106), determination of sanctions must turn on a consideration of matters such as mitigating circumstances. (*Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 796 [144 Cal.Rptr. 404, 575 P.2d 1186].) Our principal concerns are protection of the public, promotion of confidence in the profession, and maintenance of professional standards. (*Jackson* v. *State Bar, supra,* 23 Cal.3d 509, 514.)

█ Citing numerous cases that involve the Business and Professions Code and the Rules of Professional Conduct, the State Bar suggests that our holdings support disbarment here. The discipline actually imposed in those cases, however, seems to have been overlooked. Petitioner correctly points out that misconduct leading to disbarment usually has involved multiple and unrelated wrongful acts and an absence of mitigating circumstances. (See e.g., *Weir* v. *State Bar, supra,* 23 Cal.3d 564; *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868 [153

Cal.Rptr. 602, 591 P.2d 1254].) The four cases cited in which disbarment was ordered do not persuade us that disbarment is called for here. In three, the disbarred attorney pleaded guilty to or was convicted of feloniously soliciting commission of perjury or bribery. (See *In re Bloom* (1977) 19 Cal.3d 175 [137 Cal.Rptr. 168, 561 P.2d 258]; *In re Weber* (1976) 16 Cal.3d 578 [128 Cal.Rptr. 434, 546 P.2d 1378]; *In re Allen* (1959) 52 Cal.2d 762 [344 P.2d 609].) In the fourth case the attorney pleaded guilty to bribing a witness not to testify in a murder trial. (*In re Hanley* (1975) 13 Cal.3d 448 [119 Cal.Rptr. 5, 530 P.2d 1381].) Because a criminal conviction had been obtained in each of those cases, they came before this court pursuant to the provisions of sections 6101 and 6102. As we observed in *In re Hanley*, under sections 6101 and 6102 as amended in 1955, disbarment had been the rule rather than the exception following conviction of serious crimes involving moral turpitude (p. 452). There has been no criminal conviction in this case. More importantly, in none of the disbarment cases were there mitigating factors that would assure the attorney's fitness for practice.

Suspension rather than disbarment was deemed fitting in numerous cases cited by the State Bar involving conduct more blameworthy than petitioner's, particularly where mitigating circumstances appeared. (See e.g., *Codiga* v. *State Bar* (1978) 20 Cal.3d 788 [144 Cal.Rptr. 404, 575 P.2d 1186]; *Heavey* v. *State Bar* (1976) 17 Cal.3d 553 [131 Cal.Rptr. 406, 551 P.2d 1238]; *In re Jones* (1971) 5 Cal.3d 390 [96 Cal.Rptr. 448, 487 P.2d 1016]; *Reznik* v. *State Bar* (1969) 1 Cal.3d 198 [81 Cal.Rptr. 769, 460 P.2d 969, 40 A.L.R.3d 161].)

We have stressed that the appropriate discipline must be determined on the facts of each case. (*In re Jones, supra,* 5 Cal.3d 390, 400; *Yapp* v. *State Bar* (1965) 62 Cal.2d 809, 819 [44 Cal.Rptr. 593, 402 P.2d 361].) Here, petitioner's conduct does call for discipline. We note, though, the following facts that militate against disbarment. He has no prior disciplinary record regarding his 11 1/2 years as an attorney and prosecutor. (See *Bradpiece* v. *State Bar* (1974) 10 Cal.3d 742, 747 [111 Cal.Rptr. 905, 518 P.2d 337].) He was under mental and emotional stress for some time prior to and during the period when his misconduct occurred because he worked long hours under a heavy caseload. (See *Doyle* v. *State Bar* (1976) 15 Cal.3d 973, 979 [126 Cal.Rptr. 801, 544 P.2d 937].) He sought to reduce the stress before the events leading to these proceedings by requesting rotation within the district attorney's office, but his request was denied. He has been cooperative and remorseful throughout the proceedings. (See *Bradpiece* v. *State*

*Bar, supra*, 10 Cal.3d 742, 748.) He was unable to practice for one and one-half years pending his successful defense against criminal charges and the unsuccessful civil service proceedings he instituted to gain reinstatement to his position with the district attorney. (See *In re Jones, supra*, 5 Cal.3d 390, 401.) Witnesses testified to his good reputation as lawyer and his active involvement in civic affairs. (*Ibid.*)

While by no means do we condone the misconduct, in view of mitigating circumstances and the lesser discipline often imposed in similar cases we conclude that protection of public and profession does not require disbarment.

Yet, we think the misconduct warrants stronger discipline than the panel's alternate recommendation of suspension for three years with one year of actual suspension. Accordingly, it is ordered that petitioner be suspended from the practice of law for five years, that execution of the order be stayed, that he be placed on probation for five years on condition that he be actually suspended for the first two years and, if he has not passed the Professional Responsibility Examination within the two-year period, for such additional time as it takes him to pass (*Jackson* v. *State Bar, supra*, 23 Cal.3d 509, 514), and that he comply with the additional conditions recommended by the panel on July 11, 1980, with the exception of condition (2) (psychiatric counseling).

The order is effective 30 days after the filing of this opinion.

**RICHARDSON, J.**—I respectfully dissent from the majority's imposition of temporary suspension. In my view petitioner's conduct fully warrants disbarment and I would sustain such recommendation by the State Bar.

Petitioner, a prosecutor, deliberately altered written documentary evidence introduced at a criminal trial. To assist his case he changed the witness-cab driver's "trip ticket" in two respects, both the time and place of the customer's transport, thereby depriving defendant of a basis for impeaching a prosecution witness. Petitioner then destroyed the original ticket and submitted to his adversary the modified copy falsely representing it to be accurate.

He thereafter pursued a carefully calculated plan to hide his misconduct. Without either the knowledge or consent of defense counsel petitioner contacted defendant in jail in order to obtain the latter's con-

sent to waive his right to appeal in return for a lighter sentence. Petitioner's efforts to conceal his misdeeds continued for several months. When his conduct was finally disclosed to his superiors in an attempt to obtain support for his efforts at concealment, he was suspended by the district attorney's office with commendable promptness and the case was properly referred to the Attorney General for criminal prosecution.

Petitioner's conduct during trial was calculated, deceitful, knowingly performed for his own advantage, and was followed by a prolonged and complicated attempt to cover his tracks. The setting in which petitioner's misbehavior occurred was the prosecution of a defendant charged with multiple murders, the most serious of criminal offenses. It is self evident that a lawyer's presentation to the court and counsel of deliberately fabricated documentary evidence strikes directly at the very integrity of the judicial process. Such conduct is so violative of every sense of duty and honor as to justify amply the State Bar's recommendation of disbarment.

As noted, petitioner was a prosecutor and we previously have described the range and depth of his public duties under Penal Code section 691 in *In re Ferguson* (1971) 5 Cal.3d 525, 531 [96 Cal.Rptr. 594, 487 P.2d 1234]. Within the context of the offenses herein presented, however, the same ethical constraints would have bound him if he had represented a defendant because before he was either prosecutor or defense counsel he was first of all a lawyer. As such he was committed to the highest standards of honesty, fidelity, and rectitude, which he admittedly and deliberately violated.

Nor do I find in the record adequate mitigation. The fact that he had no prior discipline is not enough. Given the nature of his offenses, once was too often. Nor is mental or emotional stress or a heavy workload a justification. Most lawyers live honorably under conditions of stress and contention. It is the very air they breathe. Petitioner's general community reputation vouchsafed by character witnesses, may support his application for readmission, if exemplary behavior is sustained for an extended period of time. (*In re Giddens* (1981) 30 Cal.3d 110, 116 [177 Cal.Rptr. 673, 635 P.2d 166]; *In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191].) However it does not provide sufficient proof of mitigation in the present proceedings.

Because I conclude that petitioner's behavior constitutes moral turpitude and dishonesty (Bus. & Prof. Code, § 6106) in my view disbarment is appropriate and I do not examine further the question whether he must also be automatically disbarred because of section 6131 of the same code.

I would accept the recommendations of the State Bar's panel and review department and would disbar petitioner.

Bird, C. J., and Kaus, J., concurred.